EDWIN BAAL *et al.*, Plaintiffs-Appellants, *v.* McDONALD'S CORPORATION, Defendant-Appellee.—(RENE DAYAN, Defendant.)

First District (4th Division)    No. 80-3077

Opinion filed June 18, 1981.

William J. Harte and Richard J. Prendergast, both of Chicago (Eugene L. Shepp, of counsel), for appellants.

Foran, Wiss & Schultz, of Chicago (Richard G. Schultz and Stephen A. Gorman, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Edwin Baal, Jennie D. Baal, and Mac-Thomas Corporation, instituted suit on November 13, 1980, against McDonald's Corporation seeking a temporary restraining order and a preliminary injunction. Plaintiffs sought to enjoin McDonald's from terminating their license and lease for the operation of a McDonald's restaurant located in Grand Junction, Colorado.

On November 20, 1980, plaintiffs' petition for a temporary restraining order was denied. At the close of the evidentiary hearing, the motion for preliminary injunction was denied. The trial court found that plaintiffs had failed to establish a clear and certain right in the Grand Junction franchise that would be entitled to protection and a likelihood of success on the merits. The trial court found that the doctrine of "unclean hands" further barred plaintiffs from seeking relief. Plaintiffs moved for and obtained an order staying all proceedings in the trial court, pending the determination of this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (Ill. Rev. Stat. 1979, ch. 110A, par. 307(a)(1)).

Plaintiffs present for review the issues of (1) whether the trial court erred as a matter of law in requiring plaintiffs to establish by clear and convincing evidence their right to preliminary injunctive relief, and in ruling that the existence of any doubt precludes the issuance of a preliminary injunction; (2) whether the trial court erred as a matter of law in determining that plaintiffs had failed to establish the existence of a clearly ascertainable property right; (3) whether where that finding was based on alleged misrepresentations of plaintiffs, which rendered the franchise agreement voidable, the trial court erred as a matter of law in applying the "clean hands" doctrine to preclude preliminary injunctive relief; and (4) whether plaintiffs were entitled to preliminary injunctive relief to prevent the revocation of their franchise by McDonald's Corporation. We reverse.

At the hearing, Jennie Baal testified that she and her husband, Edwin Baal, are the sole shareholders of Mac-Thomas Corporation, a corporation organized and operated under the laws of Colorado. The corporation is engaged in the business of managing a McDonald's restaurant in Grand Junction, Colorado.

Jennie Baal stated that her association with McDonald's began in 1973 when she and her husband acquired a franchise to operate a McDonald's fast-food restaurant in Sikeston, Missouri. Prior to that time, Edwin Baal was a Chicago police officer. The witness had worked at a McDonald's restaurant on Central Avenue in Chicago. She met defendant Dayan who was the previous owner of that McDonald's until he sold it to Ernie Cochanis around 1971 or 1972. Mr. Cochanis suggested to the witness that since her husband was leaving the police department they should acquire a McDonald's franchise. According to the witness, she learned that a franchise would require an initial investment of $100,000. They could raise between $45,000 and $50,000. Dayan informed them that he would be willing to offer the financial backing necessary to raise the money. They decided to purchase the McDonald's that was under construction in Sikeston, Missouri. Dayan handled all arrangements including retaining counsel.

Further testifying, the witness said she and her husband executed a pre-incorporation agreement with Dayan which provided that they would have a 45-percent interest and Dayan would have a 55-percent interest in the Sikeston restaurant and in any future McDonald's restaurants acquired by the witness and her husband. They never operated the Sikeston franchise but exchanged it for the franchise in Paducah, Kentucky. The Paducah franchise was assigned to Mac-Thomas Corporation. Dayan instructed them to state to McDonald's on the assignment of the license that they owned 100 percent interest in the Paducah franchise. Although they owned only 45 percent in Paducah, Dayan advised them that by rights they would be operating the store 100 percent.

Jennie Baal further stated that in late 1974 or early 1975, they received a letter from McDonald's concerning whether they had undisclosed partners. At that time, they learned that McDonald's prohibited such arrangements. They informed Dayan of their intention to disclose to McDonald's that he had an interest in the Paducah franchise. Dayan indicated that they should not disclose this information because McDonald's would ruin them financially, and if McDonald's did not, he would. Since they had no funds of their own, they thought it best to comply with Dayan's order.

The witness stated that on November 26, 1974, she, her husband and Dayan executed a letter of agreement providing for a restructuring of

ownership. Dayan's equity interest would increase to 70 percent and their equity would decrease to 30 percent. They protested, but Dayan threatened to disclose their agreement to McDonald's if they did not cooperate. This occurred at the time they were preparing to purchase two more McDonald's, one in north Chicago, and the other in Waukegan. Dayan created Thomas of Illinois No. 1, Inc., and Thomas of Illinois No. 2, Inc., to reflect the new interests.

Edwin Baal testified that he and his wife operated their franchises profitably. Dayan never participated in the actual operation of the franchises. Since the fees of McDonald's were based on a percentage of the gross receipts, Dayan's share of the franchise did not affect McDonald's profits. They received several awards from McDonald's for high volume sales.

Stephen Schaeffer, a McDonald's field consultant for the Chicago stores, testified that he generally rated the Baals' stores good. They had extremely high sales for the territory, and two of the stores were rated among the top 10.

Further testimony of Jennie Baal revealed that in 1975 or 1976 she and her husband learned that a McDonald's in Grand Junction, Colorado, would become available for purchase. They agreed with the owner of the Grand Junction franchise to purchase it in early 1979. According to the witness, she and her husband advised Dayan of their intention to sell the Chicago area restaurants. Dayan was not agreeable to the sale because he would lose a large amount of income, but they persisted. On March 11, 1979, they all agreed to sell the three Chicago area franchises for $2.8 million. They further stipulated that once these restaurants were sold, they and Dayan could sever their business arrangement.

The witness stated that they were unable to find a purchase for $2.8 million because it would be difficult for a purchaser to make a profit at that price. They eventually sold the restaurants for $2.1 million. Although there was no evidence of a written agreement indicating that $2.1 million would be acceptable to Dayan, the witness stated that Dayan agreed to the latter amount instead of the $2.8 million. She also stated that this ended their relationship with Dayan. The proceeds from the sale of the restaurants were as follows: Dayan received $1.4 million cash; the Baals received $187,000 cash and $200,000 in notes; they were forced by Dayan to place $44,000 in a tax escrow account because they initiated the sale. The Mac-Thomas Corporation had been created by them to operate the Grand Junction franchise.

Edwin Baal corroborated his wife's testimony. He stated that there were no false statements in the Grand Junction documents because they had severed their relationship with Dayan. He and his wife are the sole owners of the Grand Junction franchise. They have not made a profit on

Grand Junction yet. They have lost $38,000 and have made expenditures totaling over $100,000 for improvements. They have always made their payments to McDonald's. The witness indicated that on October 30, 1980, Thomas of Illinois No. 1, Inc., and Thomas of Illinois No. 2, Inc., were dissolved.

Sam Pfeffer testified that he was the attorney who handled the acquisition of the Chicago area franchises, the closings in the sale of the Chicago stores, and the purchase of the Grand Junction store. Pfeffer also handled the dissolution of Thomas of Illinois No. 1, Inc., and Thomas of Illinois No. 2, Inc. He testified that he represented only the Baals in the acquisition of the Grand Junction restaurant. To his knowledge, Dayan had no interest in the Grand Junction franchise.

James Owens, a field service manager for McDonald's in Denver, Colorado, testified that McDonald's was pleased that the previous owner of the Grand Junction franchise decided to sell that store. He indicated that the Baals are good managers.

Jennie Baal further testified that she and her husband received an undated and unsigned letter from Dayan claiming an interest in the Grand Junction restaurant. On April 15, 1980, they received another letter from Dayan's attorney indicating he intended to enforce their agreement giving him a 70-percent interest in the Grand Junction franchise. They met with Dayan. Subsequently, on July 2, 1980, they had a meeting with representatives of McDonald's to discuss their prior association with Dayan. They explained that Dayan had no interest in the Grand Junction franchise. On September 9, 1980, McDonald's advised them, in writing, that it was terminating their license and lease agreements for the Grand Junction franchise. Plaintiffs then filed suit against McDonald's and sought injunctive relief.

Plaintiffs contend the court erred by requiring clear and convincing evidence of their right to preliminary injunctive relief and by holding that if there is any doubt as to their entitlement to such relief a preliminary injunction may not issue.

At the evidentiary hearing, plaintiffs had the burden of proving that they were entitled to injunctive relief. (*Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.* (1976), 44 Ill. App. 3d 220, 357 N.E.2d 1307.) In order to meet this burden of proof, plaintiffs must establish by a preponderance of the evidence that (1) they possess a certain and clearly ascertained right which needs protection; (2) they will suffer irreparable injury without the protection of the injunction; (3) there is no adequate remedy at law for the injury; and (4) they are likely to be successful on the merits. *Lake Shore Club v. Lakefront Realty Corp.* (1979), 79 Ill. App. 3d 918, 398 N.E.2d 893.

After careful review of the record, it is our belief that plaintiffs met

their burden. Plaintiffs showed by the preponderance of the evidence that they had a protectible interest in the franchise; that they would suffer irreparable injury by the loss of the franchise; that they had no adequate remedy at law—money damages would be inadequate; and that they are likely to be successful on the merits.

■■ It should be noted that in order to show a likelihood of success on the merits, a party is not required to make out a case which in all events will warrant relief in the final hearing. All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the position of the parties should stay as they are until the court has had an opportunity to consider the case on the merits. *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, 417.

Plaintiffs contend the trial court erred in denying preliminary injunctive relief on the ground that they failed to establish the existence of a clearly ascertainable property right. The court based this finding on alleged misrepresentations of plaintiffs which rendered the franchise license and lease agreements void or voidable. Furthermore, it was error when the trial court applied the doctrine of "unclean hands" to determine that they failed to establish a likelihood of success on the merits.

The sole role of an appellate court in addressing the grant or refusal of an interlocutory judgment is restricted to a determination of whether the trial judge correctly exercised his broad discretionary powers. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414, 416-17.) Moreover, as it is not the purpose of the preliminary injunction to determine controverted rights or decide the merits of the case, a court of review looks to the sufficiency of the evidence only for the limited purpose of ascertaining whether the trial court's discretion has been abused. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 682, 379 N.E.2d 1228, 1236.

■■ A court of equity which concerns itself with the protection of property rights treats any civil right of a pecuniary nature as a property right, and the right to acquire property by honest labor, or the conduct of a lawful business, is as much entitled to protection as the right to guard property already acquired. (*ABC Trans National Transport, Inc.*, at 683.) Plaintiffs showed that they had invested all of their funds in the Grand Junction franchise; that they made expenditures of over $100,000 for improvements; and that they were the sole investors in that enterprise. Clearly, plaintiffs possess an ascertainable property right entitled to protection.

■■ Under Illinois law, misconduct on the part of a plaintiff which will defeat a recovery in a court of equity under the doctrine of "unclean

hands" must have been conduct in connection with the very transaction being considered or complained of, and must have been misconduct, fraud or bad faith toward the defendant making the contention. (*Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 369 N.E.2d 498; *Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 303 N.E.2d 448.) Plaintiffs have not defrauded defendant McDonald's; on the contrary, plaintiffs have made and continue to make payments to McDonald's. Furthermore, the "unclean hands" doctrine of equity is not a judicial strait-jacket. It is not favored by the courts. It is not intended to prevent equity from doing complete justice. And, application of this doctrine rests in the sound discretion of the court. *Illinois Power Co.*, at 168.

■■ We hold that the doctrine of "unclean hands" is inapplicable to the transaction involved in this litigation. Moreover, a denial of injunctive relief, based on this doctrine, would prevent equity from doing complete justice by causing irreparable injury to plaintiffs, and no harm to defendant McDonald's.

Plaintiffs' final contention is that the trial court erred by failing to grant preliminary injunctive relief where McDonald's failed to establish facts to support its notice of default and rescission of the Grand Junction franchise.

A preliminary injunction is an extraordinary remedy and, thus, to warrant its issuance, a party must clearly show a need to preserve the status quo—in that he will be susceptible to irreparable damage if the injunction does not issue. (*Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 368 N.E.2d 990.) In general, injunctions rest on the authority of courts of equity to restrain persons within their limits of jurisdiction from doing inequitable acts to the wrong and injury of others. (*Dayan v. McDonald's Corp.* (1978), 64 Ill. App. 3d 984, 987, 382 N.E.2d 55, 58.) Further, there must be a clear showing of violation of plaintiffs' rights, and it must appear that a specific injury will result by reason of such violation. *Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 308 N.E.2d 313.

We believe that irreparable harm would result to the Baals if the injunction is not issued. The only hardship that would be suffered by McDonald's is a potential delay in the cancellation of the franchise, should McDonald's prevail on the merits. See *Dayan.*

Plaintiffs are not required to establish their probable success on the merits. Since they seek only to maintain the status quo until the ultimate issue is decided, " 'the injunction is properly allowed or maintained even where there may be serious doubt as to the ultimate success of the complaint.' " (*Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 698, 368 N.E.2d 1010, 1015; see *Fishwick v. Lewis* (1930), 258 Ill. App. 402, 410.) The issuance of a preliminary injunction is not proper where it

tends to change the status quo of the parties rather than preserve it. (See *Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 368 N.E.2d 990.) The status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the controversy. See *Spunar*; *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180.

■■ As stated above, plaintiffs have shown that a violation of their rights would occur and that they would suffer immediate, certain, and great injury if the injunction is denied. Plaintiffs are seeking to preserve the status quo—which is their right to operate the Grand Junction franchise pending the determination of the controversy on the merits.

For the reasons stated, we conclude that under the facts and the law pertaining to this controversy, it is important and advisable that the status quo of the matters involved in the litigation should be preserved until the final hearing. In view thereof and considering the totality of the circumstances outlined above, we believe that the trial court abused its discretion in denying plaintiffs' motion for a preliminary injunction.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed; the preliminary injunction prayed for is entered, pending a final determination of the parties' rights on the merits.

Reversed and remanded.

ROMITI, P. J., and JIGANTI, J., concur.