(No. 63564.—

KANTER & EISENBERG, Appellant, v. MADISON AS-
SOCIATES *et al.*, Appellees.

*Opinion filed May 22, 1987.*

GOLDENHERSH, J., took no part.

Bruce L. Wald, Richard W. Hillsberg, and Charles E. Alexander, of Chicago (Tishler & Wald, Ltd., of counsel), for appellant.

David M. Stahl, Donald C. Clark, Jr., and Roy B. Underhill, of Isham, Lincoln & Beale, of Chicago, for appellees.

JUSTICE SIMON delivered the opinion of the court:

Defendant Madison Associates, through its managing partner, defendant Hines Chicago Associates, Ltd. (here-

after collectively referred to as Madison), leased a floor in the Three First National Plaza Building in Chicago to the plaintiff, the law firm of Kanter & Eisenberg (Kanter). The 10-year lease, which commenced on February 1, 1982, provided that Kanter would pay both a "base rental" and "additional rent." The base rental is a fixed sum, and the additional rent represents Kanter's share of the costs of operating the building to the extent they exceed an amount stipulated in the lease. The stipulated amount, or "initial basic cost," is $4.50 per square foot.

Kanter has paid the base rental without challenge, but has objected to Madison's demands for additional rent. In February 1984, Madison demanded that Kanter pay $170,352.34, representing accrued additional rent, and when Kanter refused, Madison served Kanter with a five-day notice under the forcible entry and detainer statute (Ill. Rev. Stat. 1985, ch. 110, par. 9—209).

Kanter paid the claimed additional rent but filed a verified four-count complaint against the defendants in the circuit court of Cook County. The complaint alleged that the defendants' agent had fraudulently represented prior to execution of the lease that the $4.50 initial basic cost would be sufficient to prevent Kanter from incurring any additional rent in the first year of the lease. Kanter also alleged that it was denied access to Madison's books in violation of the lease provisions. The counts relevant here sought reformation of the initial basic cost term, a preliminary injunction against the collection of additional rent, and damages.

On June 7, 1985, while that complaint was pending, Madison served another five-day notice, this time demanding payment of $275,906.93 for additional rent accrued subsequent to the first demand. Kanter sought a temporary restraining order to prevent Madison from terminating its lease, initiating any action to evict, or attempting to collect any additional rent. In support of its

request, Kanter filed the affidavit of one of its partners, and also referred to earlier testimony, apparently elicited in a pending action between Madison and another tenant (with which this case had been consolidated for discovery). The testimony concerned whether Madison's agent had ever made the alleged misrepresentation of the adequacy of the $4.50 initial basic cost. The affidavit repeated the complaint's allegations of Madison's misrepresentation and refusal to open its books to Kanter. The affiant further stated that Kanter had spent approximately one million dollars on improvements, fixtures and furnishings for the leasehold, and that the leasehold was valuable and unique. The affidavit concluded by alleging that Kanter was threatened with irreparable harm for which it had no legal remedy. The affidavit failed, however, to demonstrate that such harm would occur and nothing further was offered to establish that fact.

Without hearing any additional evidence, the trial judge entered a preliminary injunction on June 11. That injunction restrained Madison from filing an action to evict, required Kanter to pay the additional rent claimed into an escrow account, extended by agreement the five-day notice, and continued Madison's request that part of the money be paid to Madison. Ten days later, Kanter tendered the full amount claimed at another court appearance in which the trial judge modified the injunction. The injunction as modified prevents Madison from filing an action to evict, requires Madison to escrow a part of the $275,906.93 paid by Kanter, and provides for a similar procedure for escrowing portions of future additional rent payments (if made) pending a final decision. It also recited that Kanter's payment "cures and satisfies" the five-day notice.

Madison appealed the injunction order, and the appellate court held that the trial judge erred in enjoining Madison from proceeding with its forcible detainer action and

in requiring Madison to escrow a portion of the rent paid. (144 Ill. App. 3d 588.) We granted Kanter's petition for leave to appeal. 103 Ill. 2d R. 315(a).

The primary issue in this case is not, as Kanter suggests, whether a court of equity has jurisdiction to enjoin a landlord from terminating a lease. Madison concedes that in proper circumstances equity could so act. The real question is whether the preliminary injunction entered by the trial judge was proper on the record in this case. As observed below, the answer to this question depends on the scope to be given to the ruling in *Illinois Merchants Trust Co. v. Harvey* (1929), 335 Ill. 284.

The standard for issuance of a preliminary injunction has been the subject of a "dizzying diversity of formulations." (Leubsdorf, *The Standard for Preliminary Injunctions*, 91 Harv. L. Rev. 525, 526 (1978); *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 387.) Certain threads, however, run through virtually all statements of the test: the possibility of irreparable harm to the plaintiff's legal rights pending the outcome of trial if the preliminary injunction does not issue, the potential irreparable harm to the defendant's rights if it does, and the plaintiff's likelihood of success on the merits. (108 Ill. 2d 373, 387; *Roland Machinery Co. v. Dresser Industries, Inc.* (7th Cir. 1984), 749 F. 2d 380, 386-87.) Because the decision to grant or deny interlocutory relief is necessarily made on a truncated record, the aim of the analysis must be to minimize the risk of choosing wrongly. Leubsdorf, *The Standard for Preliminary Injunctions*, 91 Harv. L. Rev. 525, 540-41 (1978); *Sierra On-Line, Inc. v. Phoenix Software, Inc.* (9th Cir. 1984), 739 F. 2d 1415, 1422.

A court faced with a request for temporary injunctive relief must first consider whether the plaintiff will sustain irreparable harm by waiting for a decision on the merits. If there is an adequate legal or equitable remedy

which will make the plaintiff whole after trial, a preliminary injunction should not issue. *Sampson v. Murray* (1974), 415 U.S. 61, 88, 39 L. Ed. 2d 166, 185-86, 94 S. Ct. 937, 951-52; *Friendship Materials, Inc. v. Michigan Brick, Inc.* (6th Cir. 1982), 679 F. 2d 100, 102-03; *Continental Group, Inc. v. Amoco Chemicals Corp.* (3rd Cir. 1980), 614 F.2d 351, 356; O. Fiss & D. Rendleman, Injunctions 331 (2d ed. 1984).

The initial inquiry, then, is whether Kanter would be irreparably harmed in the absence of a preliminary injunction restraining Madison from proceeding under the forcible entry and detainer statute. The gist of Kanter's underlying complaint is that it was fraudulently induced to agree to the initial basic cost of $4.50 and that the payments demanded are therefore higher than Kanter would have otherwise agreed to. Madison argues that Kanter has an adequate legal remedy in that Kanter can simply pay the disputed rent—thus avoiding any risk of losing the lease—and proceed with an action for damages for the alleged fraudulent misrepresentation. Accepting Madison's argument, the availability of the legal remedy and the absence of any showing that Kanter is financially unable to pay demonstrates that Kanter will not suffer irreparable harm if the preliminary injunction restraining Madison's forcible detainer action is refused. In response Kanter argues that this court's decision in *Illinois Merchants Trust Co. v. Harvey* (1929), 335 Ill. 284, forecloses any legal remedy and requires that it be protected by the issuance of an injunction.

In *Illinois Merchants*, the landlord insisted that the lease required the tenant to pay the landlord's income taxes on the rental payments. The tenant protested but, threatened with forfeiture of the lease, paid the claimed amount. Subsequent to the tenant's payment, this court ruled in another case that a similar lease provision did not require payment of income taxes by the lessee. The

tenant in *Illinois Merchants* then filed suit to recover the amounts paid under protest. This court found that the tenant could not recover under the "voluntary-payment doctrine."

The voluntary-payment doctrine provides that money paid under a claim of right by one who has knowledge of the relevant facts cannot be recovered on the ground that the claim was illegal unless the payment was made under compulsion. (*Freund v. Avis Rent-A-Car System, Inc.* (1986), 114 Ill. 2d 73, 79; *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541.) In *Illinois Merchants* the court applied the voluntary-payment doctrine and concluded that because the tenant could have obtained equitable relief against the threatened forfeiture, "[i]t follows that the payment by them was voluntary and not made under compulsion or duress." (335 Ill. 284, 296.) Thus, the failure to seek an injunction against termination of the lease precluded the tenant from recovering the payment, even though the payment had been made because of the threat of eviction and after protest by the tenant.

Kanter's position is that under *Illinois Merchants* a tenant is entitled to preliminary injunctive relief against a landlord's eviction proceeding whenever the tenant disputes the amount of rent owed, regardless of whether the tenant is susceptible to irreparable harm before a trial on the merits of his claim can be had. On this theory, Kanter has no legal remedy precisely because of the availability of equitable relief.

If *Illinois Merchants* ever stood for such a principle, that principle cannot be considered controlling here. "That any injunction should be entered as a matter of course, runs counter to the fundamental principles of equity, since it is the first duty of all courts of equity to consider the equities" of the case. (*Haack v. Lindsay Light & Chemical Co.* (1946), 393 Ill. 367, 370.) Prelimi-

nary equitable relief is available only to prevent irreparable harm, but the rule contended for by Kanter would subvert this principle and establish a new equitable regime in which a preliminary injunction must issue in a certain class of cases without regard to whether the plaintiff will suffer any irreparable harm. As a bizarre consequence, the availability of equitable relief would preclude one who fails to seek an injunction from maintaining an action to recover damages.

Beyond radically altering accepted views of the proper roles of legal and equitable relief, endorsement of Kanter's position and the meaning it attributes to *Illinois Merchants* would result in systematic, and sometimes irreparable, injury to landlords whose rent demands are justified. In many cases a landlord's ability to meet mortgage or tax payments or operating expenses may depend on collection of the rent, and if the landlord is barred by court order from either collecting the full amount or replacing the tenant, he could forfeit his own interest in the property or become liable to other tenants. We do not suggest that such a situation is more likely to occur than one in which the claim is unjustified and the tenant could be irreparably harmed by denial of an injunction, but only that a court of equity must be free to weigh these conflicting claims.

Kanter's understanding of *Illinois Merchants*—that there is no remedy at law because an injunction restraining the forfeiture must issue when the amount of rent due is contested—has to be rejected. We also hold that if *Illinois Merchants* is understood to establish a *request* for preliminary injunctive relief as a technical prerequisite to recovering rent paid pursuant to an invalid demand, it has no continuing vitality. In the 58 years since it was decided, *Illinois Merchants* has never been relied upon by this court for the proposition that a payment is voluntarily made, and legal relief precluded, because in-

junctive relief was not sought by the party making the payment. More recent decisions of this court illustrate that a request for injunctive relief is not necessary. In *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, for example, the plaintiff discovered that his electric bill contained a 10% surcharge for municipal parking facilities; aware of the city's policy of terminating electrical service for non-payment, he paid under protest. This court decided that the plaintiff had acted prudently and that recovery of the wrongful charges was not barred by the voluntary-payment doctrine. The court did not suggest that the failure to seek a preliminary injunction restraining termination of electrical service rendered the payment voluntary. Similarly, in *Allison Co. v. Village of Dolton* (1962), 24 Ill. 2d 233, the plaintiff, a contractor, paid a village licensing fee under protest when threatened with the loss of a contract. No injunction was sought. This court held that the payment was not voluntary and thus did not preclude recovery of the unlawfully exacted fees. (See also *Getto v. City of Chicago* (1981), 86 Ill. 2d 39.) As these cases suggest, there is no reason to extend the concept of voluntariness, as the court in *Illinois Merchants* apparently did, to encompass any payment not preceded by a formalistic demand for equitable relief.

Kanter's payments of the disputed rent were not made voluntarily, but rather under the compulsion of avoiding "disastrous effects to [its] business" by the termination of a valuable leasehold on which Kanter had apparently spent a million dollars in improvements. (See *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 51 (implicit and real threat to shut off phone service amounted to compulsion).) Since this case falls outside the proper ambit of the voluntary-payment doctrine, it is clear that Kanter has a legal remedy available to it here. While a tenant could suffer irreparable harm, for instance, by loss of its leasehold if it was financially unable to pay the

rent claimed pending a final decision on the merits—thus rendering the legal remedy substantially deficient—there is nothing in this record indicating that such harm would be inflicted on Kanter here. To the contrary, Kanter actually paid the disputed amounts demanded by Madison with a portion of the second payment being escrowed by Madison pursuant to the trial judge's order.

Kanter also argues that, even if it exists, the legal remedy is inadequate because Kanter may be required in each year of the lease term to pay the additional rent and then institute successive actions for damages. This argument does not address the question of Kanter's entitlement to a preliminary injunction against Madison's forcible detainer action pending a decision on the merits, but rather the wholly distinct issue of whether, on the merits, some form of permanent equitable relief would be necessary in addition to the legal remedy. Kanter's forecast of the possibility of successive actions, even if well founded, has nothing to do with the salient question of whether it will suffer irreparable harm prior to a final decision.

Since Kanter did not produce any evidence showing how it would be irreparably harmed by paying the claimed rent and awaiting the outcome of a trial on the merits, the preliminary injunction preventing Madison from proceeding with its statutory forcible detainer remedy should not have issued. (Cf. *Sampson v. Murray* (1974), 415 U.S. 61, 88-89, 39 L. Ed. 2d 166, 185-86, 94 S. Ct. 937, 951-52 (court "puzzled" by trial judge's finding of irreparable injury where plaintiff presented no witnesses or affidavits on that issue and no verified complaint was filed).) We do not foreclose the possibility that on remand Kanter could establish its need for interlocutory relief against an attempt to evict based on some future demand for additional rent by showing, for example, that it was unable to comply with such a demand.

Even then, of course, such an injunction could only issue after the court weighed the harm to plaintiff, the harm to the defendants, and the parties' respective prospects for success on the merits.

The second issue raised by the parties concerns the propriety of the trial court's order that Madison escrow a portion of the additional rent paid under protest by Kanter. Although included in the same order as the injunction restraining Madison from evicting Kanter, this is in effect a distinct mandatory injunction. There is no need to analyze in depth the factors justifying this preliminary injunction. While Kanter could be harmed if Madison were to dissipate the funds and become judgment-proof prior to a final decision at trial, Kanter presented no evidence suggesting that possibility. In the absence of any reason to believe that the failure of Madison to escrow the payments would result in irreparable harm to Kanter, the injunction was erroneously entered. Again, nothing in this opinion prevents Kanter from offering to make such a showing on remand.

For the reasons stated, the judgment of the appellate court is affirmed. The cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Appellate court affirmed;*
*cause remanded.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.