*In re* MARRIAGE OF ESTELLE WEBER, Petitioner-Appellee, and LOUIS WEBER, Respondent-Appellant.

First District (3rd Division)   No. 1—88—2267

Opinion filed April 12, 1989.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Howard A. London, of counsel), for appellant.

Schiller, DuCanto & Fleck, Ltd., of Chicago (David H. Hopkins and Sarane C. Siewerth, of counsel), for appellee.

JUSTICE McNAMARA* delivered the opinion of the court:

Petitioner, Estelle Weber, filed a petition for dissolution of her marriage from respondent, Louis Weber, and incorporated by reference a three-count declaratory judgment petition. In this appeal we consider the trial court's grant of a preliminary injunction in favor of

---

*Justice McNamara participated in this opinion prior to his assignment to the sixth division.

petitioner which, among other things, enjoined respondent from terminating petitioner's interest in a business they founded. Respondent filed this interlocutory appeal, contending that petitioner failed to establish all prerequisite elements of a preliminary injunction. On the same date, we are issuing an opinion affirming an order of the trial court dismissing counts I and II of Estelle's petition for declaratory judgment. *In re Marriage of Weber* (1989), 182 Ill. App. 3d 208.

The parties were married on September 26, 1963. In March 1987, respondent requested a divorce. On November 23, 1987, petitioner filed a petition for dissolution of marriage and other relief.

The petition alleged the parties' primary marital asset was a business partnership in the publications field. The business, Publications International, Ltd. (PIL), was founded by the parties in 1965 and incorporated in 1967. Publications International Subscription Corporation (PISC), a subsidiary of PIL, was formed to conduct subscription operations. Respondent holds title to all stock.

The parties serve as the directors of the two-member board of directors. Respondent, 50 years old, was president and now acts as chief executive officer. Petitioner, 63 years old, is corporate secretary, vice-president, and associate publisher. Both parties work full time for the business. The parties have listed the corporation with a business broker and plan to sell it.

Respondent informed the State of Illinois retail occupation tax authorities that the parties both owned PIL. The company advised Dun & Bradstreet that each party owned 50% of PIL's capital stock. PIL publications recited that both parties founded the company. The petition sought to establish that the parties were equal partners, with the accompanying fiduciary duties to each other.

The petition alleged further that respondent had sought to usurp control of the business by hiring new officer-level employees; preventing petitioner from attending key meetings; reducing petitioner's operational and managerial activities; denying her access to full information and corporate records, and full participation in business decisions, including those related to the possible sale of PIL; creating disturbances at work to humiliate petitioner; and authorizing substantial advances from PIL to himself without accounting to petitioner.

The petition alleged various examples of respondent's harassment of petitioner. For example, he stated at work that petitioner was "fired" and would be "thrown out" by the police. He told petitioner she was to have no contact with or receive information from the brokers trying to sell PIL. Respondent stated his employees had been instructed that petitioner was not to see any PIL financial records, as

she was a "mere employee." Respondent barred petitioner from a meeting with the PIL outside accountant and from meetings with customers. Petitioner's attempts to pursue business matters with PIL employees were often unsuccessful.

Petitioner alleged respondent's abuse had irreparably injured her; damaged her business reputation; and harmed her ability to effectively negotiate future employment. Petitioner alleged she had no adequate remedy at law, harming her ability to effectively negotiate a consulting agreement between herself and prospective corporate buyers of PIL.

Petitioner sought judgment for dissolution of marriage; maintenance; a 50% or greater interest in the business partnership and outstanding stock; her nonmarital property; compensatory and punitive damages; and attorney fees and costs. Petitioner requested that respondent be ordered to not harass her or deny her the right to full participation in the business and operation of the business; prohibit respondent from terminating petitioner's status as an officer and director; and prohibit respondent from changing her duties, compensations or benefits, or deplete the value of her interests in PIL and PISC. Petitioner also requested an order of protection under the Illinois Domestic Violence Act (Ill. Rev. Stat. 1987, ch. 40, par. 2311—1 *et seq.*) to prohibit respondent's harassment or physical abuse. As an alternative to a protective order, petitioner requested a preliminary injunction to enjoin respondent in the same manner. Petitioner also asked that respondent file a full accounting of sums paid to his former secretary.

On December 8, 1987, the trial court entered an agreed temporary restraining order (TRO) and other interim preliminary injunction orders continuing the effect of the TRO until the court ruled on the petition for injunctive relief.

At the preliminary injunction hearing, petitioner testified regarding her involvement in PIL. She serves as a director, executive vice-president and associate publisher. She earns $50,000 per year. Respondent is director, chief operating officer and was president until recently. He earns $100,000 per year.

Petitioner testified that she was involved in editorial, sales, personnel, legal and financial activities in the business. She read and commented on all edited copy, met regularly with editors, handled sales meetings and trade shows, and did some sales promotional work. For example, she made over 20 sales presentations in 1986. She and respondent made these presentations together, each covering different aspects of the presentation. She interviewed job applicants, tes-

tified for PIL in a trademark infringement action, attended corporate financial meetings, and signed papers and bank forms as corporate secretary.

Petitioner testified further that respondent always represented she was a 50% owner of the business, despite the fact that he held title to the stock. Her termination would affect her mentally and emotionally. She would lose her ability to oversee the business and was concerned about its deterioration in her absence. She did not know if she was still employable, but assumed it would be hard to find a job if she were fired.

Petitioner testified to numerous instances of disturbances at work and included further examples in an affidavit. For example, when petitioner's secretary brought her a PIL credit card bill allegedly showing that respondent charged $19,000 worth of goods on his girlfriend, respondent fired petitioner's secretary. Respondent yelled that petitioner was no longer to talk to him and that she should "walk on eggs and keep my mouth shut or he would call the police to remove me. He threw my coat and scarf out in the foyer so everybody could see."

James Stoller, a litigation consultant with an accounting firm, testified for petitioner that if petitioner remained in place in her present capacities he would advise a prospective buyer of PIL that her knowledge and experience would be a valuable asset, at least for a period of time. Petitioner would have a certain bargaining position with a buyer and could seek a consulting or other arrangement. If petitioner were no longer functioning within the company, it could adversely·affect the sale, her bargaining position, the viability of her career and monetary advantages. However, a purchaser would probably not employ either party for any significant period of time.

Respondent testified that he would pay petitioner as a consultant at her current salary if she would leave the business. Her presence at work was adversely affecting him and the company. He spends undue time dealing with her "on a personal level," leaving him inadequate time to deal with the business in an efficient manner. Personal discussions consumed five hours per week. Her interruptions in meetings consumed another five hours.

Respondent testified that during meetings, employees were distracted by the divorce dispute. It resulted in employees being inhibited in meetings. Respondent had trouble working on creating products and ideas because he was "afraid of Estelle walking into a meeting and disturbing the meeting and creating an upheaval." Respondent testified in an offer of proof that he never told his wife she would be a 50% partner in PIL. Profits had gone down since petition-

er's participation in the company decreased.

John Robert Stanik, the new president of PIL, testified that sales were increasing, but profits were not necessarily increasing commensurate with sales. During his four months at PIL, petitioner had subjected co-workers to "high decibel yelling" and "screaming obscenity." Thus, petitioner hampered creative thinking by the employees. Stanik did not believe petitioner's career would suffer if she were fired due to "domestic tribulation."

Howard Bauman, the production print manager, testified he heard shouting between the parties at least three times. Frank Piler, a vice-president and publisher, testified he saw two arguments between the parties.

Wayne Giampietro, an attorney for PIL, testified he had never been told that petitioner had an ownership interest in the business.

C.E. Dickerson, a management consultant, testified for respondent that petitioner's reputation and employability would not be harmed if she were fired because of a "domestic situation." She probably would be able to find a job in about six months and could very well get an executive vice-president level position. Her age would be a factor, but her experience and productivity should outweigh that factor.

The trial court entered a preliminary injunction which restrained each party from threatening, harassing or interfering with the personal liberty of the other party and from transferring, encumbering, concealing, damaging or otherwise disposing of any of the property of the other party or their joint property; prohibited respondent from interfering with petitioner in the performance of the normal duties as director, officer and employee of PIL and PISC, and from terminating her as a director, officer and employee; prohibited respondent from taking any action to diminish petitioner's partnership, shareholder or marital property interests, if any, in PIL and PISC, and from taking any action to reduce her compensation or other benefits from the business; and prohibited petitioner from issuing directives to employees or require reporting from them without first obtaining respondent's approval as president and CEO, provided that normal business communication would not be restrained.

The trial court also directed that respondent was to continue as CEO free from any interference by petitioner in the area of management and in carrying out his duties. Both parties were enjoined from making any extraordinary expenditures from PIL or PISC or other marital assets without 14 days' notice to the other party. The sale of the business could not be finalized by respondent without 30 days' no-

tice to petitioner. Issues as to other requested relief were reserved.

■ The issuance of a preliminary injunction is solely within the discretion of the trial court. (*Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793, 483 N.E.2d 999.) At the evidentiary hearing, a petitioner bears the burden of proving she is entitled to injunctive relief. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166.) A reviewing court must restrict itself to a determination of whether the trial court correctly exercised its broad discretionary powers. (*Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 422 N.E.2d 1166.) The reviewing court looks to the sufficiency of the evidence only for the limited purpose of ascertaining whether that discretion has been abused. (*Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 422 N.E.2d 1166.) The test to determine an abuse of discretion is whether the court's decision is against the manifest weight of the evidence. *Jefco Laboratories, Inc. v. Carroo*, 136 Ill. App. 3d 793, 483 N.E.2d 999.

■ ■ A party must show the need to preserve the status quo in that he would otherwise suffer irreparable harm. (*Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 422 N.E.2d 1166.) The status quo is the last, actual, peaceable, uncontested status which preceded the controversy. (*Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 422 N.E.2d 1166.) Here, the status quo of the parties encompassed their normal routine manner of operating the business which they founded and built together over a period of almost a quarter century. Petitioner seeks to preserve the status quo, *i.e.*, her right to continue participating in the operating of the business pending the final determination of the marital property controversy on the merits. Furthermore, petitioner seeks to prevent dissipation or destruction of the property in question. (See *Gannett Outdoor v. Baise* (1987), 163 Ill. App. 3d 717, 516 N.E.2d 915.) This necessarily includes PIL's right to continue to benefit from petitioner's contributions and petitioner's right to enjoy the benefits represented by her status in the business. This extends beyond any mere ownership in title to stock. (See *IMM Acceptance Corp. v. First National Bank & Trust Co.* (1986), 148 Ill. App. 3d 949, 499 N.E.2d 1012.) Petitioner sufficiently proved the propriety of preserving the status quo.

■ The issue of whether the trial court properly entered the preliminary injunction requires the examination of the possibility of irreparable harm to petitioner's legal rights pending the outcome of trial if the preliminary injunction does not issue; the potential irreparable harm to defendant's rights if it does issue; and petitioner's likelihood of success on the merits. (*Kanter & Eisenberg v. Madison Associates*

(1987), 116 Ill. 2d 506, 508 N.E.2d 1053.) Thus, by a preponderance of the evidence, a petitioner must establish she possesses a certain and clearly ascertained right which needs protection; she will suffer irreparable injury without the injunctive protection; there is no adequate remedy at law for the injury; and she is likely to be successful on the merits. *Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 422 N.E.2d 1166.

■ Respondent maintains that petitioner failed to establish a clearly ascertained right which needs protection. Petitioner need only raise a fair question as to the existence of the right claimed. (*Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 422 N.E.2d 1166.) We believe petitioner has shown a legal right needing protection. The right to acquire property by labor or by conducting a lawful business is equally as entitled to protection as the right to guard property already acquired. (*Baal v. McDonald's Corp.*, 97 Ill. App. 3d 495, 422 N.E.2d 1166.) A legitimate, threatened business interest is a right which may receive injunctive protection. *Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034.

Petitioner showed that she and respondent were the sole founders of PIL; that they worked together at trade shows, and in soliciting and selling publication services to clients; that they shared major operational decision making; that they have both devoted full time to the business; and that they both invested their funds in the business. While one party dealt with department heads in certain areas, the other party managed other areas of the business. Both parties served on the two-member board of directors.

In addition, respondent admitted to a management consultant petitioner's participation in the total operating functions of the business. Furthermore, respondent named both parties as owners of PIL on State tax forms. Respondent also informed Dun & Bradstreet that each party owned one-half of PIL's capital stock. Petitioner presented sufficient evidence to establish her possession of an ascertainable property right entitled to protection. The trial court was entitled to find that petitioner has a protectable property interest as "founder and owner, officer, director, employee and insider of PIL," and that the chief marital asset could not be duplicated outside of the company.

■ ■ Respondent next maintains petitioner failed to establish that she would be susceptible to irreparable damage if the injunction did not issue and if she was forced to wait for a decision on the merits. The court properly found that without the protection of the injunction, her termination may waste the principal asset by depriving it of her continued service and expertise; that it would preclude her

from negotiating payments in exchange for a covenant not to compete or a consulting contract if the company were sold. The threat of loss of sales is sufficient proof of irreparable harm. (*Gannett Outdoor v. Baise*, 163 Ill. App. 3d 717, 516 N.E.2d 915.) A party seeking an injunction need not wait until an injury occurs. (*Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 372 N.E.2d 125.) Moreover, the threat of dissipation of the marital asset may be considered. (See *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 464 N.E.2d 795.) The evidence here shows a legitimate threat to petitioner's business interests and that irreparable harm may result absent the protection offered by a preliminary injunction.

■ If an adequate legal or equitable remedy will make the petitioner whole after trial, a preliminary injunction should not issue. (*Kanter & Eisenberg v. Madison Associates*, 116 Ill. 2d 506, 508 N.E.2d 1053.) Here, however, petitioner's termination would result in damages not clearly ascertainable in money with a reasonable degree of certainty. Petitioner seeks more than mere compensation of salary.

We must also weigh the harm to petitioner against the harm to respondent and the parties' respective prospects for success on the merits. (*Kanter & Eisenberg v. Madison Associates*, 116 Ill. 2d 506, 508 N.E.2d 1053.) The business has been run with petitioner's active participation for 24 years, with both parties participating in daily management decision making. Because of her extensive involvement in the business, she may be awarded a substantial part of PIL at the conclusion of the dissolution of marriage action.

In contrast, the only harm suffered by respondent is the personal conflicts which both parties have created in the workplace. The trial court has restrained both parties from further disrupting the workplace. We perceive no significant injury to respondent in waiting for a final adjudication on the merits. Without the injunction, petitioner suffers the severance of her property rights. With the injunction, neither party loses presently held property rights. Thus, the injury suffered by petitioner without the injunction is greater than that which respondent would suffer if the injunction is issued.

■ Moreover, under an exception to the necessity of establishing probable success on the merits, if the subject of the injunction is property rights which may be destroyed, petitioner may seek only to maintain the status quo, even where there may be serious doubt as to the ultimate success on the merits. (See *Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 368 N.E.2d 1010.) We agree with the general proposition cited in *In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 475 N.E.2d 1077, that the issue of whether petitioner is

likely to succeed on the merits is not fruitful in a case such as this, where the dissolution proceeding is a "no win" situation.

Respondent relies heavily upon the aforementioned *In re Marriage of Schwartz*, where this court held the trial court erred in granting injunctive relief. Unlike the present case, in *Schwartz*, the last actual, peaceable, uncontested status was where respondent alone held title to the Florida condominium which she permitted petitioner to use. The trial court changed that status by taking away respondent's right to exclude anyone she wished from the property. The petitioner held no interest in the property. In contrast, the trial court here made findings, supported by the evidence, that petitioner holds certain property interests in the asset.

We conclude that the trial court's findings are supported by the evidence. It did not abuse its discretion in issuing the preliminary injunction.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

FREEMAN, P.J., and WHITE, J., concur.