CARBONIC FIRE EXTINGUISHERS, INC., Plaintiff-Appellee, v. JEFFREY HEATH, Defendant-Appellant.

Second District   No. 2—89—0596

Opinion filed November 27, 1989.

John A. Zaleski, of Algonquin, for appellant.

Richard H. Balog, of St. Charles, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Carbonic Fire Extinguishers, Inc., filed a five-count complaint in the circuit court of Kane County seeking, *inter alia*, a preliminary injunction to prevent defendant, Jeffrey Heath, from contacting any of plaintiff's customers and from disclosing any information contained in plaintiff's scheduling book and customer list. Following the issuance of a temporary restraining order, an evidentiary hearing was held, after which the circuit court issued a preliminary injunction without bond restraining defendant from contacting any customers of plaintiff and from disclosing any information contained in plaintiff's scheduling book and customer list.

Defendant brings this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)) from the order granting the preliminary injunction. He essentially contends that the trial court

abused its discretion in granting the preliminary injunction. In particular, defendant argues that the customer list and pricing information in the scheduling book do not constitute trade secrets.

The facts, as established at the preliminary injunction hearing held on May 22, 1989, are as follows. Plaintiff is an Illinois corporation, solely owned by Daniel Heath, defendant's brother. Plaintiff is engaged in the business of cleaning restaurant hoods and their related components and in selling and servicing of fire extinguishers. The business territory is the Chicago metropolitan area and Rockford. Plaintiff has approximately 590 customers. Plaintiff estimates that there are over 10,000 restaurants in the Chicagoland area. Defendant believes there are over 100,000 restaurants in this area.

Defendant had been employed by plaintiff intermittently for the past 10 years. He had been a manager of a cleaning truck for the last three years prior to leaving on March 16, 1989. Although it is not entirely clear from the hearing, defendant apparently drove the truck and supervised the cleaning of various restaurant hoods. There was no written employment contract between plaintiff and defendant, nor was there a covenant not to compete.

During the course of his employment, defendant utilized a scheduling book, also referred to below as a customer list, which contained the names of customers, their addresses, their telephone numbers, the customer contact person, the date of the last servicing of a particular customer, and the price to be charged a particular customer. Generally, customers were serviced on a regular basis, usually every three to six months. When defendant terminated employment with plaintiff, he failed to return the 1988 scheduling book, and, according to defendant, he threw the scheduling book in the trash after he left. He did turn in his 1989 scheduling book. Defendant testified that he knew most of the customers from memory.

Daniel Heath testified that defendant had, subsequent to his termination with plaintiff, contacted about 40 of plaintiff's customers and performed hood-cleaning services for approximately 13 of plaintiff's customers. Defendant also contacted approximately 25 businesses that were not plaintiff's customers.

According to Daniel Heath, the customer list and pricing information, which is on a computer and also contained in the scheduling book, was not given to anyone who was not a manager and that it was always kept under lock and key. It was treated as confidential. Customers were developed through sales calls. Whenever a truck manager secured a new customer, he received 20% of the sales price of the job. Rick Hogrewe, general manager for plaintiff, testified that

there was no written policy regarding the scheduling book and customer information although it was made known to the employees that the customer information could not be divulged. Defendant, on the other hand, stated that he took the book home with him and that his wife and other employees had access to it.

While the customer information is not made available to the general public, Hogrewe and Daniel Heath conceded that the names, addresses, and telephone numbers of various customers would generally be available in the telephone book. Hogrewe further admitted that the appropriate customer contact could usually be ascertained by contacting a particular business and inquiring in that regard.

Defendant admitted establishing his own business called Quality Hood Cleaning Company and soliciting cleaning work from various customers of plaintiff that he had developed social relationships with while employed with plaintiff. He was also solicited by several of plaintiff's customers and has done cleaning for them. Since leaving plaintiff, defendant has serviced approximately 25 restaurants.

The trial court found that plaintiff's accumulation of customers willing to have hoods cleaned on a regular basis and the price paid by customers were trade secrets. Defendant was preliminarily enjoined from contacting any of plaintiff's customers and from disclosing any of the information contained in plaintiff's scheduling book and customer list.

A preliminary injunction is an extraordinary remedy which is applicable only to situations where an extreme emergency exists and serious harm would result in the absence of an injunction. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386-87, 483 N.E.2d 1271.) In deciding whether to issue a preliminary injunction, the trial court must consider: (1) the possibility of irreparable harm to the plaintiff's legal rights pending the outcome of the trial if the preliminary injunction does not issue; (2) the potential irreparable harm to the defendant's rights if it does; and (3) the likelihood of the plaintiff succeeding on the merits. (*Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill. 2d 506, 510, 508 N.E.2d 1053.) As to the first consideration, if there is an adequate legal or equitable remedy which will make the plaintiff whole after trial, then a preliminary injunction should not issue. (*Kanter & Eisenberg*, 116 Ill. 2d at 510-11, 508 N.E.2d at 1055.) Furthermore, a plaintiff must show the existence of a protectable right or interest which will suffer irreparable harm if the injunction is not issued. (*Buzz Barton & Associates*, 108 Ill. 2d at 387, 483 N.E.2d at 1277.) Finally, the decision to grant or deny a preliminary injunction is within the sound discretion of the

trial court and should not be reversed absent an abuse of that discretion. *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 7-8, 528 N.E.2d 978.

Defendant contends, in pertinent part, that plaintiff's customer list and pricing of its services are not trade secrets. In this regard, defendant claims the scheduling book was not confidential. He further argues that the customer's names are contained in various telephone books and the pricing information is readily available from the customer himself.

■ Plaintiff responds that the customer list and prices charged, both contained in a scheduling book maintained by defendant, constitute trade secrets within the meaning of section 2(d) of the Illinois Trade Secrets Act (Act) (Ill. Rev. Stat. 1987, ch. 140, par. 352(d)) and, therefore, constitute a protectable right or interest. Accordingly, we address whether the customer list is a trade secret under the Act and, therefore, a protectable right.

Section 2(d) of the Act defines trade secret as:

> "(d) 'Trade secret' means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." (Ill. Rev. Stat. 1987, ch. 140, par. 352(d).)

The focus of the Act and the common law is on the secrecy of the information sought to be protected. *Service Centers of Chicago, Inc. v. Minogue* (1989), 180 Ill. App. 3d 447, 453, 535 N.E.2d 1132.

■ Both a customer list and pricing information fall within the general category of what potentially could constitute a trade secret under the definition set forth in section 2(d). Defendant does not argue to the contrary. However, in order to prove that the customer list and pricing information contained in the scheduling book constitute a trade secret within the meaning of the Act, plaintiff must establish that they are (1) sufficiently secret to derive economic value from not being known to other persons who can obtain economic value from their disclosure or use (Ill. Rev. Stat. 1987, ch. 140, par. 352(d)(1)), and (2) are the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality (Ill. Rev. Stat.

1987, ch. 140, par. 352(d)(2)). Plaintiff has failed to meet the requirements of subsection (d)(1) under the particular facts presented in this case.

In regard to the customer list, the evidence failed to establish that the list of customers contained in the scheduling book used by defendant was sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure or use. Plaintiff's general manager, Rick Hogrewe, and David Heath admitted that the names, addresses, and telephone numbers of the various customers were readily obtainable from the yellow pages of the telephone directory. While we recognize that in cases decided prior to the Act a customer list in certain circumstances has been held to constitute a trade secret regardless of the availability of customer's names in a public directory (see *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 358, 425 N.E.2d 1034 (cases cited therein)), here, plaintiff is engaged in the restaurant-hood-cleaning business, a service commonly utilized by restaurants. As such, although the actual customers using plaintiff's services are not readily apparent from the telephone directory, anyone seeking to compete with plaintiff, including defendant, could very likely encounter plaintiff's customers by simply contacting restaurants through the telephone directory. Thus, plaintiff has failed to establish the secrecy of the customer list. Further, other persons would not obtain economic value from disclosure or use of plaintiff's customer list as identification of potential customers who might use a restaurant–hood-cleaning service would entail little, if any, expense beyond that ordinarily required to establish a customer relationship. (*Cf. Service Centers of Chicago, Inc.*, 180 Ill. App. 3d at 454-55, 535 N.E.2d at 1136-37.) Consequently, plaintiff has not shown that its customer list is sufficiently secret to derive economic value from not being generally known to other persons who could obtain economic value from its disclosure or use.

The pricing information contained in the scheduling book, which is simply the sales price of the job, also does not constitute a trade secret under the Act. It too is not sufficiently secret to derive economic value from not being generally known to persons who could obtain economic value from its disclosure or use. The pricing information here, unlike a unique formula used to calculate a price but unknown to a customer or competitors (see *Service Centers of Chicago, Inc.*, 180 Ill. App. 3d at 454-55, 535 N.E.2d at 1136-37), was available to the various customers to which it pertained. As such, those customers were at liberty to divulge such information to a competitor of plaintiff's, or

to anyone for that matter. Further, there is no evidence that someone else performing this service would not have knowledge of the normal price to be charged for this service. Plaintiff does not contend that its price for a job is unique or not generally known to others in the business. As plaintiff has failed to establish that its customer list or pricing information meet the requirements of section 2(d)(1) of the Act, we need not address whether plaintiff engaged in reasonable efforts to maintain the secrecy of its customer list or pricing information as required by section 2(d)(2) of the Act.

■ As we determine that neither the customer list nor the pricing information constitutes a trade secret as that term is defined in the Act, plaintiff has failed to show the existence of a protectable right or interest, and, therefore, the issuance of the preliminary injunction was improper. (See *Buzz Barton & Associates*, 108 Ill. 2d at 387, 483 N.E.2d at 1278.) Furthermore, plaintiff is not likely to succeed on the merits because his claim is based on the wrongful appropriation of a trade secret which, as discussed above, does not exist in this case. Thus, it was an abuse of discretion to issue the preliminary injunction.

For the foregoing reasons, we reverse the order of the circuit court of Kane County.

Reversed.

UNVERZAGT, P.J., and McLAREN, J., concur.