GANNETT OUTDOOR OF CHICAGO, Plaintiff-Appellant, v. GREGORY W. BAISE, Secretary, Department of Transportation, Defendant-Appellee.

First District (3rd Division)   No. 87—2229

Opinion filed November 25, 1987.

Robert J. Weber, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Gannett Outdoor of Chicago, appeals from the trial court's denial of its motion for a preliminary injunction which sought to prevent the Illinois Department of Transportation (defendant) from removing an outdoor advertising structure owned by plaintiff. On appeal, plaintiff contends that the court erred in denying its request for the preliminary injunction.

In March 1985, plaintiff purchased an outdoor billboard located on the east side of the Calumet expressway in Calumet City, Illinois, from Triangle Sign Company. The billboard had never been registered with defendant. Plaintiff also negotiated a ground lease with the owners of the land on which the billboard was located.

The billboard was erected by Triangle in 1959, at which time the property on which the sign was located was zoned industrial. Thereafter, Calumet City rezoned the property residential, causing the sign to become a legal nonconforming use. Plaintiff owns no other signs with interstate highway exposure in the area.

Upon acquiring the sign, representatives of plaintiff met with the chief of electrical inspections of Calumet City, who found that the billboard was in an unsafe condition due to vandalism. The inspector also

found that the multiple beam support structure presented a hazard because it allowed easy access to children. Calumet City issued plaintiff a permit to install a single pole sign structure. Defendant stipulated that the city required plaintiff to remove the 12 steel beams and replace them with one pole as a condition precedent to the issuance of an electrical permit. At the time it performed the work, plaintiff did not seek or obtain a permit from defendant. Essentially, the work performed consisted of removing the 12 I-beams and replacing them with a single, five-foot diameter pole. The same upper portion of the structure, the portion displaying the advertising message, was then placed back on the new single support pole. In addition, some portions of the old signboard were replaced and some electrical work was required.

The cost of replacing the support system was $19,000. Evidence was offered that the subject sign has a current value in excess of $125,000. The annual income from a similar sign is between $25,000 and $30,000.

On August 18, 1986, defendant notified plaintiff that it had to remove the sign within 30 days because it had been erected on property which was zoned residential. A representative of plaintiff's contacted defendant and asserted that plaintiff had merely performed maintenance on the sign and had not erected a new sign. However, defendant's sign control section stated that the billboard was "erected" in violation of the law and therefore plaintiff need not apply for a permit. The parties failed to reach a settlement of this issue, and on May 19, 1987, plaintiff filed a complaint for declaratory and injunctive relief, after learning that defendant had obtained contractor's bids for removal of the sign. The trial court granted plaintiff's motion for a temporary restraining order until a hearing on its motion for a preliminary injunction could be heard.

At the hearing on plaintiff's motion for a preliminary injunction, Stephen Shinn, plaintiff's vice-president, testified. Shinn explained the nature of the industry trade practice called "showings," where plaintiff or a competitor would sell a group package of several signs to a single customer in an effort to reach targeted areas or a target group of consumers. Shinn also testified regarding the demand for signs along interstate highways and the effect on business of losing a customer to a competitor.

Shinn further testified that he was familiar with the Illinois registration requirement for signs and that he did not know the sign in question was unregistered when plaintiff purchased it in March 1985. Shinn stated that he knew replacement of an old sign with a new sign required a State permit but he did not think that the billboard was a

new sign, rather, it was the same sign with a new support system. At no time did plaintiff receive a request from defendant to register the sign. The letter from defendant only requested that plaintiff remove the sign because it had been erected in a residential zone.

After Shinn testified, the trial court stated that it was ready to render a decision on the preliminary injunction before plaintiff was given an opportunity to argue or before defendant was allowed to present any evidence. The trial court denied plaintiff's motion for a preliminary injunction, making the following findings: (1) the subject sign was unregistered and plaintiff knew or should have known that it had to be registered; (2) that plaintiff's actions after it acquired the sign did not constitute "normal maintenance and repair" but instead constituted "erection" of a new sign; (3) that plaintiff knew or should have known that erection of a new sign requires a permit; (4) that a permit could not be issued because the area where plaintiff erected the billboard was zoned residential; and (5) the department's notice requiring removal of the subject sign is valid.

The statute which defendant maintains plaintiff has violated is the Highway Advertising Control Act of 1971 (Highway Act or Act) (Ill. Rev. Stat. 1985, ch. 121, par. 501 *et seq.*). The Act regulates outdoor advertising through the use of a permit system. Section 8 of the Act provides that within 90 days of the effective date of the Act (July 1, 1972), existing signs subject to regulation under the Act must be registered with the Department of Transportation and the owners must pay $5 for a permit. Owners of new signs erected after the effective date of the Act are subject to the same permit requirement, but must obtain a permit before erection of the sign. (Ill. Rev. Stat. 1985, ch. 121, par. 508.) The other relevant portion of the statute states:

"Sec. 10. The following signs are unlawful and a public nuisance:

(a) Signs erected after the effective date of this Act in violation of this Act;

(b) Signs not registered in accordance with this Act or in accordance with the regulations established by the Department;

(c) Signs without valid permits, as required by this Act or by regulations established by the Department.

Each sign declared by this Section to be unlawful and a public nuisance shall be removed or brought into compliance with this Act by the owner, without compensation, within 30 days after receipt of notice by certified mail from the Department, such notice period to be computed from the date of mailing." Ill. Rev. Stat. 1985, ch. 121, par. 510.

■ The issuance of a preliminary injunction is within the sound discretion of the trial court. A preliminary injunction is a provisional remedy which concludes no rights. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 483 N.E.2d 1271, quoting *Nestor Johnson Manufacturing Co. v. Goldblatt* (1939), 371 Ill. 570, 21 N.E.2d 723.) A preliminary injunction is granted before a hearing on the merits to preserve the status quo. *Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 308 N.E.2d 313.

■ ■ The status quo to be maintained by the issuance of a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy. (*Madigan Brothers, Inc. v. Melrose Shopping Center Co.* (1984), 130 Ill. App. 3d 149, 474 N.E.2d 383.) In addition, the status quo to be maintained by a preliminary injunction is the status quo necessary to prevent dissipation or destruction of the property in question. (*Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 262 N.E.2d 753.) The property in the present case is the billboard. Evidence submitted shows the billboard has a market value set between $125,000 and $150,000. It is undisputed that if the trial court's denial of plaintiff's preliminary injunction is affirmed, defendant will proceed with its plan to remove the sign. Defendant acknowledges that it has solicited bids for removal of the sign. Under these circumstances, we believe a preliminary injunction is necessary to preserve the status quo before the issues are fully adjudicated on the merits.

The law concerning the issuance of a preliminary injunction is well settled. One who seeks a preliminary injunction must prove each of the following elements: (1) he possesses a clearly ascertainable right or interest which needs protection; (2) he has no adequate remedy at law; (3) irreparable harm will result if the preliminary injunction is not granted; and (4) he has a likelihood of success on the merits. (*Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 480 N.E.2d 1273.) In addition, the trial court must conclude that the benefits of granting the injunction outweigh the possible injury that the opposing party might suffer as a result thereof. *Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 480 N.E.2d 1273.

In the present case, plaintiff has a clearly ascertainable right in the subject sign which requires protection. Without the preliminary injunction, defendant will remove the sign, without any compensation to plaintiff, leaving plaintiff's property rights violated. Furthermore, removal of the sign would preclude plaintiff from receiving profits from the sale of space on the sign to advertisers and possibly injure the earned reputation of providing good service to its customers. Thus

plaintiff has an ascertainable right which requires protection.

Plaintiff has also shown that it has no adequate remedy at law. Defendant claims that plaintiff can be adequately compensated by damages in a civil suit using an equation of the approximate current value of the sign plus the number of years it remains removed times the approximate annual income minus the scrap value of the sign. Defendant fails to account for the effect of "showings" on plaintiff's earning potential. Plaintiff offered evidence that advertisers often seek a "showing," which is a program in which a number of signs in different geographic areas are made available for a coordinated program in the advertiser's attempt to reach targeted areas or groups of consumers. Shinn testified that if plaintiff could not provide a sign which was critical to the showing, the advertiser would go to another company that could deliver the whole package. This sign may be critical to a showing by virtue of its location and interstate exposure. The record indicates that plaintiff does not own other signs with interstate exposure in the area, and thus, if this sign is not available for plaintiff to sell as part of a showing, advertisers may go to another sign company to purchase a showing which includes the Calumet City area. The loss of income from a potential loss of showing is difficult to calculate, and for this reason we find that plaintiff has no adequate remedy at law. See *U-Haul Co. v. Hindahl* (1980), 90 Ill. App. 3d 572, 413 N.E.2d 187.

■ We also believe that irreparable harm will result to plaintiff if the preliminary injunction is not allowed. The irreparable harm incurred would be the removal of the subject sign, causing plaintiff to lose income and sales both from the use of the sign and of other signs which plaintiff owns. A demonstration of irreparable harm is related to the proof of a legitimate business interest. As the court stated in *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 294, 389 N.E.2d 1300, "[o]nce a protectable interest has been established, injury to plaintiff will presumably follow if that interest is not protected."

■ Several courts have held that it is not necessary that a party seeking an injunction wait until an injury occurs before relief will be granted. (*Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 372 N.E.2d 125; *Armour & Co. v. United American Food Processors, Inc.* (1976), 37 Ill. App. 3d 132, 345 N.E.2d 795.) Based on this principle, we believe that plaintiff need not show an actual loss of sales or profits before the trial court can grant a preliminary injunction. In *U-Haul Co. v. Hindahl*, the court analyzed a noncompetition agreement in relation to plaintiff's motion for a

preliminary injunction. There, the court determined that a threat of loss of sales and service was sufficient proof of irreparable harm. Here, we likewise believe the evidence shows a legitimate threat to plaintiff's business interest and irreparable harm may result if this interest is not protected by a preliminary injunction.

■ Finally, the fourth factor normally considered before issuance of a preliminary injunction is whether the movant has established a likelihood of success on the merits. We must note, however, that this court has held that if the subject of the injunction is property which may be destroyed, or if the plaintiff only seeks to maintain the status quo until the ultimate issue is decided, an injunction may properly be allowed without establishing probable success on the merits. (*Blue Cross Association v. 666 North Lake Shore Drive Associates* (1981), 100 Ill. App. 3d 647, 427 N.E.2d 270; *Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 368 N.E.2d 1010.) In the present case, plaintiff has shown that it seeks to maintain the status quo and prevent removal of the subject sign by seeking the preliminary injunction. Even if plaintiff does not properly fall in this exception to a showing of likelihood of success on the merits, it is not required to make out a case which in all events will warrant relief after a final hearing. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) All that is required of the petitioning party at the preliminary injunction stage of the proceeding is that he raise a fair question as to the existence of the right claimed and demonstrate that he probably will be entitled to the relief prayed for if the proof should sustain the allegations. *Instrumentalists Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 480 N.E.2d 1273.

■ Since the decision to grant or deny preliminary injunctive relief rests within the sound discretion of the trial court, and because its findings may not be disturbed absent a showing of an abuse thereof, the role of a reviewing court is limited to a determination of whether those findings are contrary to the manifest weight of the evidence. (*Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 480 N.E.2d 1273.) We therefore make no final determination as to the likelihood of plaintiff's success on the merits after a full adjudication.

Defendant claims that plaintiff must remove the sign because it was "erected" in violation of the Highway Act. Conversely, plaintiff maintains that the sign was not erected; rather, the work done on the sign constituted normal maintenance and repair of a nonconforming legal sign. Section 3.08 of the Act, (Ill. Rev. Stat. 1985, ch. 121, par. 503.08) states that " '[e]rect' means to construct, build, raise, assemble, place, affix, attach, create, paint, draw or in any other way bring

into being or establish; but does not include any of the foregoing activities when performed as an incident to the change of advertising message or normal maintenance or repair of a sign or sign structure."

Significantly, we note that this court in *Department of Transportation v. Keller Development Corp.* (1984), 122 Ill. App. 3d 1038, 462 N.E.2d 532, in interpreting the same provision of the Act, found that the statutory definition of "erect" did not preclude the replacement of an existing sign as part of the "normal maintenance or repair" of an existing, nonconforming sign. In *Keller*, the original sign was extensively damaged in a windstorm. The existing sign was completely removed, and no materials from the old sign were used in the construction of the replacement sign. Nevertheless, this court found that replacement of an existing, nonconforming sign is "repair" and not "erection." 122 Ill. App. 3d at 1040.

In the event that the trial court agrees that the sign was not "erected," it still must be determined whether defendant provided plaintiff with the required 30-day notice to comply with the statute or remove the subject sign for failure to comply. The statute states that a sign must be removed or brought into compliance within 30 days of receipt of notice by defendant. (Ill. Rev. Stat. 1985, ch. 121, par. 510.) The notice of August 18, 1986, from defendant to plaintiff states that the sign must be removed because it was erected on property zoned residential and does not mention plaintiff's option to comply with the statute.

We find that plaintiff met its burden regarding the merits of the case and we thus find that the trial court abused its discretion in denying plaintiff a preliminary injunction.

Finally, to allow a preliminary injunction, the trial court must conclude that plaintiff will suffer greater harm without the injunction than defendant will suffer if it is issued. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6; *People ex rel. Hartigan v. Stianos* (1985), 131 Ill. App. 3d 575, 475 N.E.2d 1024.) In weighing respective harms in the present case, it becomes clear that the injunction should have been granted. The subject sign has been in existence for 28 years and became a nonconforming use when the property was subsequently zoned residential. Upon recommendation and with permission of Calumet City, plaintiff undertook to revamp the sign in an effort to make it safer. Without this preliminary injunction, defendant will proceed to remove the sign, resulting in loss of use and an undetermined amount of profits. In contrast, we perceive no injury to defendant in waiting for a final adjudication on the merits. Thus, the injury to

plaintiff if the injunction is not granted is greater than that defendant will suffer if it is issued, and for this additional reason we believe that the trial court should have issued the preliminary injunction.

For the foregoing reasons the judgment of the circuit court of Cook County denying plaintiff a preliminary injunction is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Judgment reversed and remanded.

RIZZI and WHITE, JJ., concur.