FRANK MUSTACCI, Plaintiff-Appellee, v. AUSTIN BANK OF CHICAGO, Defendant-Appellant (The First National Bank of Des Plaines, Defendant).

First District (5th Division)   No. 1—91—0495

Opinion filed March 13, 1992.

Richard Lee Stavins, Harold L. Moskowitz, and Edward S. Salomon, all of Robbins, Rubinstein, Salomon & Greenblatt, Ltd., of Chicago, for appellant.

Cynthia Giacchetti, of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

On June 20, 1980, James Aquilla established land trust number 98092994 at the First National Bank of Des Plaines, as trustee. At that time James Aquilla was the sole beneficiary of the land trust with the sole power of direction. The property in the trust was 420 Lauder Lane, Inverness, Illinois.

In the 1970s and early 1980s, plaintiff Frank Mustacci, an uncle of James Aquilla, loaned various sums of money to him. Aquilla promised to pay principal and interest on the loans but no such payments were ever made.

On September 27, 1982, Aquilla assigned the entire beneficial interest in land trust number 98092994 to Frank Mustacci. The assignment was absolute on its face and was lodged with the First National Bank of Des Plaines.

At the hearing on the motion for preliminary injunction, Austin Bank produced and marked as defendant's exhibit 16 an undated security agreement signed by Aquilla and Mustacci purporting to grant Mustacci a security interest in the land trust described above to secure payment of certain indebtedness of Aquilla to Mustacci together with a promissory note for the indebtedness due signed by Aquilla in favor of Mustacci dated September 27, 1983. However, this security agreement and note were neither offered by the defendant nor received by the court in evidence at the hearing.

Mustacci in his discovery deposition testified that the assignment described above was given to him as collateral for his loan to Aquilla and that if Aquilla had repaid the $150,000 loan, Mustacci would have had no interest in the property. However, at the hearing on the request for preliminary injunction Mustacci testified that the assignment of the beneficial interest in the property was not as collateral, but was absolute and was in repayment of the $150,000 loan he had made to Aquilla.

Mustacci has a grammar school education, is employed as an equipment operator for Northern Illinois Gas Company and is the uncle of James Aquilla. Mustacci lived at the subject property with Aquilla and other family members from 1979 to 1990.

In 1980, Aquilla wanted to borrow an additional $60,000 and was referred to appellant Austin Bank by a good customer of the bank for a loan. Aquilla brought to Austin Bank a copy of the trust agreement

and the prior existing assignment from Aquilla to Mustacci. Aquilla also brought to Austin Bank a collateral assignment of the beneficial interest in the land trust purportedly signed by Mustacci which it required to grant the loan. Aquilla received all the proceeds from the $60,000 loan. Evidence at the hearing revealed that Mustacci's signature on the collateral assignment to Austin Bank was not genuine.

In 1990, Aquilla was convicted in United States District Court in Chicago of drug charges and in the same year defaulted on his loan from Austin Bank. In late 1990, when Mustacci attempted to sell the property, it was discovered that Austin Bank had scheduled a sale of the beneficial interest in the land trust pursuant to the terms of the collateral assignment and pursuant to article 9 of the Uniform Commercial Code (UCC). Ill. Rev. Stat. 1989, ch. 26, par. 9—504.

Mustacci brought an action in the circuit court of Cook County to restrain Austin Bank's sale of the property, contending that he was absolute assignee of the beneficial interest in the land trust, and not merely a collateral assignee with a security interest only. The trial court ruled that Mustacci was an absolute assignee and entitled to a preliminary injunction to restrain Austin Bank from enforcing its security interest by sale of the property until further order of court. Austin Bank timely filed notice of interlocutory appeal from the injunctive order.

■ A preliminary injunction is a provisional remedy, the purpose of which is to preserve the status quo until a final hearing is held and a decision rendered on the merits. (See, *e.g., Gannett Outdoor v. Baise* (1987), 163 Ill. App. 3d 717, 516 N.E.2d 915.) Although a mandatory injunction forcing a party to take action altering the positions of the parties comes under stricter scrutiny, injunctions that preserve the status quo until the trial court can determine the merits are within the court's discretion. It must weigh the benefits of granting the injunction against the possible injury to the opposing party from the injunction. See *Gannett*, 163 Ill. App. 3d 717, 516 N.E.2d 915; *Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 515 N.E.2d 1339; *In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 475 N.E.2d 1077.

At the hearing on the motion for preliminary injunction, there was significant evidence that Mustacci's signature was forged on the collateral assignment Aquilla gave Austin Bank to receive the $60,000 loan. Austin Bank was unable to persuade the trial judge that Mustacci had ratified the collateral assignment.

Austin Bank next proceeded on a theory that Mustacci was only a collateral beneficiary of the land trust and that the assignment of

September 27, 1982, although absolute in its terms, was in fact only collateral. To support this theory Austin Bank argued that Mustacci's testimony at his discovery deposition indicated that the land trust assignment was to secure an indebtedness of Aquilla to him for $150,000 and that if he had been repaid he would have had no interest in the property. In contrast, Mustacci's testimony at the trial was that the assignment of the beneficial interest to him was absolute to satisfy the debt owed to him by Aquilla.

In further support of its collateral assignment, Austin Bank relied primarily on defendant's exhibit 16, which purported to be an undated security agreement, and defendant's exhibit 15, a note from Aquilla to Mustacci for the indebtedness owed executed on September 27, 1983, exactly a year after the execution of the assignment of beneficial interest to Mustacci on September 27, 1982.

There was no other evidence that directly linked the security agreement and note to the execution of the assignment of beneficial interest to Mustacci. However, Mustacci acknowledged his signature on the security agreement, but disclaimed any knowledge of its meaning or contents. It was undisputed that Aquilla never made payments to Mustacci on the note which accompanied the agreement.

In summary the evidence presented to the trial court was as follows:

> (a) Conflicting testimony of Mustacci regarding his interest in the land trust. In his discovery deposition, he stated the assignment from Aquilla was to secure an indebtedness of $150,000 from Aquilla. At the hearing, Mustacci testified that the assignment was absolute and in repayment of the aforementioned indebtedness;

> (b) An assignment of beneficial interest absolute on its face from Aquilla to Mustacci dated September 27, 1982;

> (c) An undated security agreement from Aquilla to Mustacci and a note executed on September 27, 1983, a year after the assignment referred to above with no other evidence linking these two documents to the assignment dated September 27, 1982;

> (d) An assignment of beneficial interest in the land trust from Mustacci to Austin Bank on which Mustacci's signature was forged.

■ Based upon the foregoing, we determine that evidence advanced at the hearing was adequate for the trial court to conclude that Mustacci had a sufficient interest in the property to support a preliminary injunction. As was stated in *Rotary Club v. Harry F.*

*Shea & Co.* (1983), 120 Ill. App. 3d 988, 995, 458 N.E.2d 1002, 1007, quoting *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 500, 422 N.E.2d 1166, 1171:

> " 'All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he probably will be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the position of the parties should stay as they [*sic*] are until the court has had an opportunity to consider the case on the merits.' "

See also *Gannett*, 163 Ill. App. 3d 717, 516 N.E.2d 915.

It is certainly possible that Austin Bank may be able to demonstrate at a hearing on the merits that the assignment of the beneficial interest from Aquilla to Mustacci, although absolute on its face, was, in fact, a security interest only, thereby not entitling Mustacci to the injunctive relief he requests.

However, at the preliminary stage, to allow Austin Bank to proceed with a UCC sale based upon documents, one of which was forged, would deprive Mustacci of property although he received no benefit from the underlying loan transaction between Aquilla and Austin Bank. As was stated in *Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 422 N.E.2d 953, that would work an injury "that ought not be submitted to on the one hand or inflicted on the other." *Cross Wood Products, Inc.*, 97 Ill. App. 3d at 286, 422 N.E.2d at 957.

For the foregoing reasons, we affirm the trial court.

Affirmed.

MURRAY and GORDON, JJ., concur.