LOUIS VASQUEZ *et al.*, Plaintiffs-Appellees, v. THE CITY OF WOOD-STOCK, Defendant-Appellant.

Second District   No. 2—92—1265

Opinion filed March 26, 1993.

Caldwell, Berner & Caldwell, of Woodstock (Michael T. Caldwell, of counsel), for appellant.

James T. Harrison, of Woodstock, for appellees.

JUSTICE QUETSCH delivered the opinion of the court:

Defendant, the City of Woodstock, appeals from the trial court's order granting the request of plaintiffs, Louis Vasquez *et al.*, for a preliminary injunction pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), enjoining defendant from listening to, replaying, erasing, editing, destroying or materially altering tape recordings of plaintiffs' conversations recorded without plaintiffs' consent on a private line reserved for personal use by police department personnel. Defendant contends the trial court abused its discretion in granting the relief because plaintiffs failed to establish a clearly ascertainable right to relief and because the injunction does not preserve the status quo. We affirm.

As a preliminary matter, we note that a trial court order granting or denying a preliminary injunction is appealable as of right under Rule 307(a)(1). In its jurisdictional statement on appeal, defendant incorrectly states its appeal is taken pursuant to Supreme Court Rule 308, which governs interlocutory appeals by permission. 134 Ill. 2d R. 308.

In 1982, the Woodstock police department operated two 911 telephone lines and six seven-digit telephone lines numbered 338-2131, 338-2132, 338-2133, 338-2121, 338-2151 and 338-7799. Lines numbered 338-2131, 338-2132 and 338-2133 were considered administrative lines and were listed in the local telephone directory. Line 338-7799 was installed for personal use by police department personnel and was not listed in the local telephone directory. Subsequently, the lines numbered 338-2121 and 338-2151 were disconnected. All 911 lines, 338-2131, 338-2132 and 338-2133 were tape-recorded. Calls com-

ing in on 338-2131 rolled over to 338-2132 and 338-2133 if 338-2131 was busy, but no calls from other lines rolled over to 338-7799.

Because 338-7799 was installed for personal use, it was not taped on the tape logging device. Calls on 338-7799 could be answered anywhere in the police station. However, if a call came in on 338-7799 and it was answered in the communications room by a dispatcher at the console, it was taped by the call-check system. The call-check system automatically preserves calls on every line coming in to the console for up to an hour and then erases them. If 338-7799 is answered at the console and then transferred to another phone, taping ceases upon transfer of the call away from the console.

In December 1982, Woodstock's then chief of police, William P. Patrick, sent a memo to all office personnel. That memo stated in pertinent part:

"[A]s you know, all the telephone lines are taped with the exception of 338-7799. The line was intentionally left untaped to allow for personal calls, however, we request that you keep those calls brief and to a minimum."

In January 1988, another departmental correspondence memo was issued regarding the use of line 338-7799. It reminded all personnel to keep personal phone calls made or received to a minimum. In addition it stated:

"[I] also [sic] like to remind you that all official business calls are to be made on taped telephone lines. 338-7799 is to be used for [sic] for personal telephone calls only."

In addition, the police department's telecommunications training manual in effect until September 1991 informed personnel:

"338-7799 calls will be answered with a simply [sic] greeting. (Unlisted number designated for [P]olice [P]ersonnel's [sic] personal calls. Untaped line)."

Beginning late in 1991, defendant began a changeover from the 911 emergency system it had to an enhanced 911 system (E-911). The entire communication center was gutted, expanded and remodeled. As a part of the new E-911 system, new tape logging and recording equipment was purchased.

In May 1991, questions arose over the way a complaint had been handled by a dispatcher. A city council member called the dispatcher regarding the handling of the incident and eventually asked the city manager to investigate. There were discrepancies between the dispatcher's version of the conversation and the council member's version. The chief of police attempted to listen to the call between the dispatcher and the council member on tape. However, since the call

was taken by the dispatcher at the console on 338-7799, the call was only recorded on call-check. Hence, the call was only preserved for approximately one hour and then automatically erased.

Upon further investigation, defendant contends it discovered that some calls for emergency services from the McHenry County Sheriff's Department were being received on 338-7799 because that line had been programmed into the speed-dialer system at the sheriff's office. Defendant contends at this point, after consulting with the city manager, the chief of police authorized the taping of 338-7799 by the tape logging device. In June 1991, Christine Lutz, communications supervisor for the police department, employed Michael Staehling to install a telephone jack from 338-7799 to be used with the new tape logging device. He was employed again in February 1992 to actually connect that line with the new tape logging device. At no time did defendant notify police department personnel that taping had begun on 338-7799.

Testimony by sheriff's department personnel revealed that the speed-dialer system was not operational until April 1992. In addition, testimony revealed that 338-7799 had been mistakenly programmed in to the speed-dialer as an emergency number. A dispatcher from the sheriff's office stated that she knew 338-7799 was a nonemergency number and that she used it to conduct nonemergency business with the dispatchers at the police department, so she asked that it be programmed into the speed-dialer. This caused confusion at the sheriff's office which resulted in some calls for emergency services being placed to 338-7799. Those calls were not answered immediately, sometimes not until the sixth or seventh ring. When the sheriff's office inquired into the reason for the delay, dispatchers from the police department informed them that 338-7799 was a nonemergency line with low priority and instructed the sheriff's office to use 911 or 338-2121 for emergencies.

On August 10, 1992, at approximately 12:20 a.m., plaintiff Charles Amati was involved in the investigation of a traffic accident involving a Spanish-speaking subject arrested for driving under the influence. The subject was injured in the accident. Initially, Officer Amati notified his supervisor, Sergeant Pierce, of the need for an interpreter while they were both present at the scene of the accident. Sergeant Pierce notified the police department over the radio. His attempts to locate an interpreter were unsuccessful. At approximately 1 a.m., Officer Amati placed a call to the police station on 338-7799 from the hospital to inquire into the availability of an interpreter to read the subject the summary-suspension notice and other rights. He

spoke with Bruce Hillstrom, the communications officer on duty that night, and allegedly made a derogatory reference to Sergeant Beu. Officer Amati was unaware that his conversation with Bruce Hillstrom was being taped.

Sergeant Beu later reviewed the tape of that conversation and informed Chief Pitzman of its contents. Plaintiff Louis Vasquez was summoned into Chief Pitzman's office on the morning of August 10, 1992. The chief informed Officer Vasquez, who was also president of the Fraternal Order of Police for Woodstock Lodge 191, that he had learned of some upsetting information and that he wanted Officer Vasquez to relay that information to the membership.

Chief Pitzman advised Officer Vasquez that 338-7799 was being taped and had been taped ever since the incident involving the city council member's complaint in May 1991. Further, Chief Pitzman stated that he was tired of hearing conversations involving derogatory statements. In particular, Chief Pitzman mentioned the conversation between Officer Amati and Bruce Hillstrom which had occurred earlier that morning, in addition to other statements made by Officer JoAnn Richards and Officer Donald Madsen. The chief informed Officer Vasquez that no disciplinary action was being taken against Officer Amati.

On August 31, 1992, the trial court granted plaintiffs' request for a temporary restraining order requiring the defendant to preserve the tape recordings of calls made on 338-7799 on or before August 21, 1992. In their second amended complaint for a preliminary injunction, plaintiffs alleged defendant's tape recording of all incoming and outgoing personal calls on line 338-7799 on or before August 21, 1992, violated the eavesdropping act (Ill. Rev. Stat. 1991, ch. 38, par. 14—1 et seq.), as well as plaintiff's right to privacy as secured by the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV), and by article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6). Plaintiffs alleged that unless the tapes were preserved, the loss of physical evidence necessary for their cause of action against defendant would result and asked that the tapes be preserved and that defendant be ordered to halt future taping of that line.

On October 21, 1992, after finding an error in its original order dated October 13, 1992, the trial court entered a preliminary injunction order nunc pro tunc October 13, 1992, granting plaintiffs' request to preserve the tapes but denying their request to halt further taping of 338-7799. Further, the court ordered defendant to turn the tapes over to the court. Defendant timely appeals.

First, we note a preliminary injunction is a provisional remedy granted to preserve the status quo. (*Hough v. Weber* (1990), 202 Ill. App. 3d 674, 684.) Because a preliminary injunction is an extraordinary remedy, it should be granted only pursuant to the utmost care and should not issue unless the need is clear. (*Gold v. Ziff Communications Co.* (1989), 196 Ill. App. 3d 425, 430.) To establish entitlement to a preliminary injunction, the plaintiffs must demonstrate that: (1) they possess a certain and clearly ascertainable right which needs protection; (2) they will suffer irreparable harm without the protection of the injunction; (3) there is no adequate remedy at law for their injuries; (4) there is a substantial likelihood of success on the merits; and (5) in the absence of preliminary relief, they will suffer greater harm without the injunction than defendants will suffer if it is issued. (*Hough v. Weber*, 202 Ill. App. 3d at 684.) The decision whether to grant a preliminary injunction rests within the trial court's broad discretionary powers, and appellate review of the court's order is limited to a determination of whether the trial court has abused that discretion. *Mister v. A.R.K. Partnership* (1990), 197 Ill. App. 3d 105, 111; *Hough v. Weber*, 202 Ill. App. 3d at 688.

Defendant contends the trial court abused its discretion in granting plaintiffs' request for a preliminary injunction because plaintiffs failed to establish a clearly ascertainable right in need of protection and because the injunction does not preserve the status quo. We disagree.

■ Plaintiffs alleged that defendant's taping of their conversations on 338-7799 violated the eavesdropping act (Act) (Ill. Rev. Stat. 1991, ch. 38, par. 14—1 *et seq.*). Section 14—6 of the Act provides for civil remedies to injured parties. (Ill. Rev. Stat. 1991, ch. 38, par. 14—6.) Section 14—2 of the Act sets forth the elements of the offense of eavesdropping and provides in pertinent part:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to conversation or (2) in accordance with Article 108A or Article 108B of the 'Code of Criminal Procedure of 1963' ***; or

(b) Uses or divulges *** any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." (Ill. Rev. Stat. 1991, ch. 38, pars. 14—2(a), (b).)

Article 108A, referred to above, pertains to judicial supervision of the use of eavesdropping devices. Ill. Rev. Stat. 1991, ch. 38, par. 108A—1 *et seq.*

Plaintiffs alleged that defendant's taping of 338-7799 was unlawful because defendant did not obtain the consent of all the parties to the conversations prior to taping, nor did defendant obtain a court order authorizing the taping of those conversations. Moreover, in their complaint, plaintiffs allege that they had a reasonable expectation of privacy with regard to the use of 338-7799 because for 12 years the line was used as a private, unpublished telephone line by police department personnel, narcotics task force personnel, social service personnel, prisoners, arrestees, attorneys, labor union representatives and others where confidentiality was sought and privacy was expected.

At the hearing for preliminary injunction, evidence was presented in the form of police department memoranda in which the police department informed its personnel of the private nature of the line and which repeatedly referred to the status of the line as untaped. In addition, police department personnel testified to the fact that it was common knowledge 338-7799 was to be answered simply by saying "hello" rather than identifying the police department because the line was not to be used for official police business. Department personnel also testified that they used 338-7799 to conduct personal business and that they had an expectation of privacy when they used that line. They stated they had no knowledge that their conversations on that line were being taped until the circumstances which gave rise to this lawsuit became known.

However, defendant asserts that its actions regarding the taping of that line were exempt from the provisions of the Act under section 14—3(d) and, therefore, the trial court erred in finding plaintiffs had a clearly ascertainable right in need of protection. (Ill. Rev. Stat. 1991, ch. 38, par. 14—3(d).) That section provides "[r]ecording or listening with the aid of any device to any emergency communication made in the normal course of operations by any federal, state or local law enforcement agency or institutions dealing in emergency services" is exempt under the Act. Ill. Rev. Stat. 1991, ch. 38, par. 14—3(d).

Defendant contends that because the line was sometimes used for emergency communications, including communications from the sheriff's office, plaintiffs could not have an expectation of privacy when using that line. It contends the taping of 338-7799 was lawful because of the emergency nature with which the line became vested over time.

However, the evidence reveals the actions of the police department regarding the status of that line reinforced the beliefs of department personnel that 338-7799 was a private, untaped line. Official memoranda identified 338-7799 as a private, untaped line to be used to conduct personal business, and department personnel were instructed to answer that line with a simple greeting. Moreover, the emergency communications initiated from the sheriff's office were never intended to be placed to 338-7799.

McHenry County sheriff's office personnel testified that 338-7799 was mistakenly programmed into their speed-dialer system and used for emergency communications. Police department personnel informed the sheriff's office not to use that line because of its private nature and urged the sheriff's office to use either 911 or 338-2131, the department's published administrative line, for emergency communications. Such mistakenly made communications cannot be considered "communication made in the normal course of operations" as required to be an exempt communication under section 14—3(d). Ill. Rev. Stat. 1991, ch. 38, par. 14—3(d).

■ Thus, in light of the evidence presented, we do not find the trial court erred in concluding plaintiffs had a clearly ascertainable right in need of protection. In so finding, we note a preliminary injunction does not anticipate or depend upon the ultimate conclusion of a cause; rather, the granting of a preliminary injunction shows only that a sufficient case has been presented to preserve the property or rights in issue until a final hearing on the merits can be held. *Hough v. Weber*, 202 Ill. App. 3d at 688.

Defendant contends that the trial court abused its discretion in granting the preliminary injunction because the injunction does not preserve the status quo. It argues that because there are approximately 31 tapes (numbered to correspond to each day of the month) which are erased after one month's time, an order requiring the department to preserve the tapes alters the status quo. Such an argument is meritless. The tapes were in existence at the time the injunction was sought. Therefore, the trial court did not alter the status quo when it ordered the tapes be preserved.

Accordingly, we conclude the trial court did not abuse its discretion in granting the preliminary injunction. The purpose of such an injunction is not to determine controverted rights or to decide controverted facts or the merits of the case. (*Bryant v. Village of Sherman* (1990), 204 Ill. App. 3d 583, 588.) Plaintiffs only needed to show that they raised a "fair question" about the existence of their right and that the court should preserve the status quo until the cause can be

774

decided on the merits. (*Bryant*, 204 Ill. App. 3d at 588; *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386.) The evidence presented below supports the determination of the trial court that plaintiffs did indeed raise a "fair question" about the existence of their right and shows that the trial court should preserve the status quo by preserving the tapes.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

UNVERZAGT and McLAREN, JJ., concur.