BEN C. SCHWEICKART *et al.*, on Behalf of Themselves, the Woodhaven Association and its Members, Plaintiffs-Appellees, v. RUTH POWERS *et al.*, Defendants-Appellants.

Second District No. 2—92—1065

Opinion filed May 11, 1993.

Steven P. Bloomberg and George A. Marchetti, both of Moss & Bloomberg, Ltd., of Bolingbrook, and George H. Litow, of Paw Paw, for appellants.

Patrick J. Liston, of Pignatelli & Pignatelli, of Rock Falls, and Robert J. Lepri, of Trizna, Lepri, Rogers & Munden, of Chicago, for appellees.

JUSTICE QUETSCH delivered the opinion of the court:
Plaintiffs, Ben Schweickart, Frank O'Shea, Richard Doran, Jr., and James Barthel *et al.*, filed a five-count complaint against defendants, Ruth Powers, Donald Hartman, Charles Lehman, Mary Mot-

singer, Sorrell Pischke and John Smith, requesting declaratory and injunctive relief. Plaintiffs alleged defendants breached their fiduciary duties to the Woodhaven Association, a common-interest community, and its members by disqualifying plaintiffs from running for election to Woodhaven's board of directors. The trial court granted plaintiffs' request for a preliminary injunction permitting plaintiffs to resume campaigning and prohibiting defendants from opening ballots already collected until a hearing could be held on the merits of plaintiffs' claim. Defendants appeal, contending the trial court erred in granting the injunction because plaintiffs had alternate relief available to them, the court failed properly to balance the equities, and the court failed to find that the plaintiffs have a substantial likelihood of success on the merits. We affirm.

The Woodhaven Association (Woodhaven) is a not-for-profit corporation established to promote the common interests of its members. All members are owners of campsites in the Woodhaven Lakes development. Woodhaven is managed by an elected board of directors (board). According to Woodhaven bylaws, to qualify as a director one must be a member of the association in good standing, 21 years of age and fiscally responsible. A member in good standing is defined as a member current in the payment of assessments and not in violation of any provision in the declaration of covenants, bylaws, or rules and regulations as adopted by the board of directors.

The board has established extensive rules and regulations designed to enforce restrictive covenants, regulate the types of structures in the development, and regulate the transaction of business in the development. Candidates for the board must sign an oath attesting to their qualifications as defined by the rules and regulations before he or she receives a petition for nomination for candidacy. The testimony at the hearing on the preliminary injunction revealed the following.

Plaintiff Ben Schweickart testified that he has been a member of the Woodhaven Association since August 1982. He was elected to the the board of directors in 1985 and in 1988. He filed the necessary documents to run for election again late in May 1992. Schweickart received a letter dated June 9, 1992, from Robert Mahnke, general manager of the Woodhaven Association whose duty it is to oversee the election process, commending Schweickart's commitment to Woodhaven and notifying Schweickart of certain campaign deadlines. On June 12, 1992, Mahnke notified Schweickart that he was in violation of certain regulations and that, as a potential candidate, he had until 12 p.m. on July 20, 1992, to correct the areas of noncompliance.

Schweickart stated the rules provide a property owner in violation of the covenants or rules and regulations be given approximately 30 days to correct the problem. If the problem is not corrected, a citation is issued. Once a citation is issued, a property owner may request a hearing before the appeals board. He had not received a citation.

The alleged violations dealt with certain lights which hung on trees on his campsite which Schweickart subsequently removed, electric and television antenna permits, the placement of his trailer on the property, and an alleged outstanding citation which subsequently proved to be a mistake. Schweickart corrected the alleged violations. However, the board informed him that he needed to obtain a plot survey in order to get a variance for his trailer.

Schweickart's trailer had been placed on the lot in 1984. The alleged violation had not been raised in either of the other two board elections in which Schweickart participated. The board's letter alleged the tip of the trailer was 18 inches into the easement along Schweickart's property. Schweickart testified that he was under the impression that at the time he placed his trailer on the property it was permissible to have a "tip out" or a "slide out" into the easement area up to two feet. This fact was later verified by Scott Schulz, a member of Woodhaven's staff, at the hearing on the variance for Schweickart's property.

After Schweickart corrected all the alleged violations and received the variance he was told that he still did not qualify to run for election to the board because he was a permanent resident in violation of the covenants and restrictions. However, in a separate action brought previously by other members of the association, the circuit court of Lee County found that Woodhaven was estopped from enforcing the permanent residence restriction.

Frank O'Shea testified that he received a letter from Woodhaven dated June 12, 1992, informing him that he was not qualified to run for election to the board because he did not have permits on file for his television antenna and electrical services. After the permits were submitted, O'Shea received a letter dated June 26, 1992, informing him that he was no longer in violation of any rules, regulations, bylaws, covenants or restrictions.

O'Shea subsequently received a letter dated July 1, 1992, informing him that his lot was missing a pin which was crucial in determining whether he was in violation of setback requirements. As a result, he was told to obtain a plot survey by a licensed surveyor which would be used to determine if any variances were needed. The deadline for all of the information was July 11, 1992.

Robert Mahnke testified that there is no rule or regulation requiring a property owner to submit a survey unless that property owner is requesting a variance. In addition, no regulation required candidates for the board of directors to submit such surveys. Mahnke also admitted that O'Shea was probably not in violation of any rules and regulations. Because O'Shea did not submit a survey, he was disqualified.

Richard Doran and James Barthel were notified of certain violations. After correcting the violations, they were disqualified for reasons similar to Schweickart and O'Shea. Mahnke testified that at the time they were disqualified neither had been issued a citation of any kind or provided a hearing.

Plaintiffs were not allowed on the election ballot. On July 31, 1992, plaintiffs' attorneys requested the board delay mailing the ballots until September 1, 1992. The request was denied August 3, 1992. The published election schedule called for the ballots to be mailed on August 13, 1992. Robert Mahnke mailed the ballots on August 8, 1992, on his own initiative.

Plaintiffs filed a five-count verified complaint on August 10, 1992, requesting declaratory and injunctive relief. Defendants filed a motion to dismiss upon which a hearing was held on August 14, 1992. The motion was denied as to four of the counts and the court reserved ruling on the fifth count. The hearing on the preliminary injunction was held on August 21, 1992. The court granted plaintiffs' request for a preliminary injunction on August 28, 1992. Plaintiffs were permitted to resume campaigning and defendants were enjoined from interfering with plaintiffs' campaign effort. Defendants were also enjoined from opening any of the ballots returned until a hearing on the merits could be held. The hearing was set originally for September 28, 1992.

Defendants filed this appeal pursuant to Supreme Court Rule 307(a). (134 Ill. 2d R. 307(a).) On appeal, defendants contend the trial court erred in permitting plaintiffs to resume campaigning while enjoining defendants from interfering with plaintiffs' campaign efforts and enjoining defendants from opening the ballots already received in the election. Plaintiffs filed a motion to dismiss defendants' interlocutory appeal, asserting the appeal is moot as to the issue of campaigning and not yet ripe as to the propriety of holding the ballots until a full hearing on the merits. We ordered this motion taken with the case.

Plaintiffs contend that the portion of this interlocutory appeal regarding the right of the plaintiffs to continue campaigning is moot because the evidence below reveals that their ability to campaign for all

intents and purposes effectively ceased after Labor Day 1992. We agree.

It is well established that a reviewing court will dismiss a pending appeal where the court has notice of facts which show that only a moot question is involved. (*Harris v. Education Officers Electoral Board of Community Consolidated School District 110* (1990), 203 Ill. App. 3d 917, 919-20; see also *George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 76.) A question is moot when no actual rights or interests of the parties remain or when events occur which render it impossible for the reviewing court to grant effective relief to either party. *Harris v. Education Officers Electoral Board*, 203 Ill. App. 3d at 920; *In re Marriage of Holem* (1987), 153 Ill. App. 3d 1095, 1098.

The record below consists of plaintiffs' verified pleadings and the testimony presented at the hearing on the preliminary injunction, including exhibits. In their amended motion for a restraining order, plaintiffs alleged that the elections for vacancies on the board of directors historically take place during the summer season because the majority of residents are not present on the grounds of Woodhaven after Labor Day. Candidates have traditionally campaigned by way of personal appearances at combined section meetings of members of the association and paid political advertisements placed in Woodhaven's weekly news publication. The combined section meetings allow large groups of members to meet with the candidates face-to-face. Plaintiffs testified that such meetings only take place during the summer months and the regular section meetings "taper off" after August. Moreover, the weekly news publication is distributed only to members at their campsites or is left at the entry gate for members to pick up.

In its order granting plaintiffs' request for a preliminary injunction prohibiting defendants from interfering with plaintiffs' attempts to campaign, the trial court held that the plaintiffs would suffer irreparable harm, because most of the members

> "cease staying at Woodhaven, and stop visiting at [*sic*] Woodhaven after Labor Day. Effective campaigning requires reaching these people while they are at Woodhaven. Attempts to campaign after Labor Day would be expensive and ineffective, as the bulk of the owners would no longer be present."

Defendants did not file an answer to plaintiffs' verified complaint, nor did they present evidence at the preliminary hearing disputing plaintiffs' contention that campaigning effectively ceases after Labor Day.

■ Accordingly, the evidence reveals campaigning effectively stopped after Labor Day, 1992. A reviewing court may take judicial no-

tice of events which reveal that an actual controversy no longer exists between the parties. (*Bundy v. Church League of America* (1984), 125 Ill. App. 3d 800, 803.) When reversal of the order can have no practical effect on the controversy because of developments following the issuance of that order, questions arising from the order are moot. (*Harris v. Education Officers Electoral Board*, 203 Ill. App. 3d at 920.) The preliminary injunction was entered on August 28, 1992. In 1992, Labor Day was observed on September 7. Defendants' notice of appeal was filed on September 21, 1992. Thus, we conclude the issue on appeal as to the propriety of the portion of the trial court's order permitting plaintiffs to resume campaigning is moot and must be dismissed.

Defendants contend the issue is not moot and argue that a live controversy still exists pursuant to this court's opinion in *Bundy v. Church League of America* (1984), 125 Ill. App. 3d 800. However, defendants' reliance on our decision in *Bundy* is misplaced.

In that case, plaintiff Bundy appealed contending the trial court lacked jurisdiction to dissolve the injunction blocking certain actions of the defendants. (*Bundy v. Church League of America*, 125 Ill. App. 3d at 802.) Defendants argued the issue was moot because the actions Bundy sought to prevent had already taken place upon the dissolution of the injunction. (*Bundy v. Church League of America*, 125 Ill. App. 3d at 803.) After concluding the trial court lacked the jurisdiction to dissolve the injunction, we found the controversy was justiciable because every act of the court beyond its jurisdiction is void; thus, the injunction was still in effect and the actions of defendants were in violation of the injunction. *Bundy v. Church League of America*, 125 Ill. App. 3d at 807.

In their response to plaintiffs' motion to dismiss the appeal, defendants in this case argue the issue is not moot because they are attacking the jurisdiction of the trial court to enter the injunction. This reasoning is defective for two reasons. First, defendants do not contend on appeal that the trial court lacked jurisdiction to enter the injunction. Rather, they question the propriety of the trial court's decision to do so. Second, the issue remains moot even if we were to find the trial court lacked jurisdiction to enter the injunction in the first instance, which we do not, because vacating the injunction would have no practical effect.

Campaigning effectively ceased after Labor Day, September 7, 1992. Any action taken by this court with regard to that portion of the injunction would have no practical effect on the controversy. Where a decision reached on the merits would render wholly ineffective relief to the prevailing party, the court, in effect, has rendered an

advisory opinion. (*Harris v. Education Officers Electoral Board*, 203 Ill. App. 3d at 920.) Illinois courts do not issue advisory opinions to guide future litigation. (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 76.) Accordingly, this portion of the appeal is dismissed.

 In their motion to dismiss, plaintiffs also contend the portion of the trial court's order enjoining defendants from opening the ballots already collected is not ripe for appeal until a full hearing on the merits is held. We disagree.

A controversy is ripe when it has reached the point where the facts permit an intelligent and useful decision to be made. (*People v. Ziltz* (1983), 98 Ill. 2d 38.) Plaintiffs argue that the propriety of the injunction relies on the decision ultimately reached on the merits of the case. To the contrary, the propriety of a preliminary injunction does not anticipate or depend upon the ultimate conclusion of a cause. *Vasquez v. City of Woodstock* (1993), 242 Ill. App. 3d 766, 773.

The purpose of Supreme Court Rule 307(a), providing for interlocutory review of an injunction, is to provide review of a trial court's decision granting or denying a preliminary injunction before a decision on the merits is held. (134 Ill. 2d R. 307(a).) Clearly, the propriety of the trial court's order enjoining defendants from opening the ballots is ripe for interlocutory appeal. We turn now to the issues raised by defendants on appeal.

 To establish entitlement to a preliminary injunction, plaintiffs must demonstrate that: (1) they possess a certain and clearly ascertainable right which needs protection; (2) they will suffer irreparable harm without the protection of the injunction; (3) there is no adequate remedy at law for their injuries; (4) there is a substantial likelihood of success on the merits; and (5) in the absence of preliminary relief, they will suffer greater harm without the injunction than defendants will suffer if it is issued. (*Vasquez v. City of Woodstock*, 242 Ill. App. 3d at 770; *Hough v. Weber* (1990), 202 Ill. App. 3d 674, 684.) The decision whether to grant a preliminary injunction rests within the trial court's broad discretionary powers, and appellate review of the court's order is limited to a determination of whether the trial court has abused that discretion. *Vasquez v. City of Woodstock*, 242 Ill. App. 3d at 771; *Hough v. Weber*, 202 Ill. App. 3d at 688; *Mister v. A.R.K. Partnership* (1990), 197 Ill. App. 3d 105, 111.

On appeal, defendants first contend the trial court erred in granting injunctive relief because alternative relief was available. In particular, defendants argue that because declaratory relief was available to plaintiffs injunctive relief was not appropriate in this case.

■ However, defendants mischaracterize this portion of the test for whether the issuance of a preliminary injunction is appropriate. The standard is not whether alternative relief is available. Rather, the standard is whether an adequate remedy at law exists for plaintiffs' injuries. (*Vasquez v. City of Woodstock*, 242 Ill. App. 3d at 771.) If an adequate legal or equitable remedy exists which will make the plaintiff whole after trial, a preliminary injunction will not issue. (*Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill. 2d 506, 510-11.) In determining whether an adequate remedy at law or in equity exists which would make plaintiffs whole, the court must examine whether plaintiffs will suffer irreparable harm by waiting for a decision on the merits. See *Kanter & Eisenberg v. Madison Associates*, 116 Ill. 2d at 510.

Defendants' argument that the availability of a declaratory judgment somehow precludes the issuance of a preliminary injunction is without merit. Plaintiffs' complaint requested declaratory and injunctive relief. The appropriate inquiry is whether there existed a remedy which could make plaintiffs whole after a hearing on the merits.

Plaintiffs alleged in their pleadings and testified at the hearing that they would suffer irreparable harm without the injunction. Specifically, plaintiffs alleged they would lose the ability to campaign for the board vacancies after Labor Day, 1992. Moreover, if the election were held before a trial could take place, plaintiffs contend they would lose the opportunity to obtain effectual relief. We find support for plaintiffs' contention in *Harris v. Education Officers Electoral Board* (203 Ill. App. 3d 917).

■ In that case, plaintiff challenged the nominating petition of a candidate for the school board contending it failed to comply with the law governing such petitions. (*Harris*, 203 Ill. App. 3d at 918.) Plaintiff requested that the nominating petition be stricken and that the candidate be declared ineligible for the election. The cause reached the appellate court eight months after the election in which the candidate won a seat on the board. (203 Ill. App. 3d at 920.) The court found that such relief would have no actual effect on the case because the candidate had already taken office. (203 Ill. App. 3d at 920.) Thus, the appeal was dismissed as moot. (203 Ill. App. 3d at 920.) Plaintiffs in the case at bar sought the injunction to prevent the loss of an effective remedy. They presented sufficient evidence to show they would be irreparably harmed without the injunction. Therefore, we conclude the trial court did not abuse its discretion in so finding.

Defendants also contend the trial court erred by failing to consider whether plaintiffs had a substantial likelihood of success on the

merits and to rule accordingly. Our review of the record reveals the contrary. In its order granting plaintiffs' request for the injunction, the trial court specifically noted that each plaintiff was likely to succeed on the merits. Thus, our examination of this issue must focus on whether the trial court properly reached this conclusion.

A preliminary injunction does not anticipate or depend upon the ultimate conclusion of a cause; rather, the granting of a preliminary injunction shows only that a sufficient case has been presented to preserve the property or rights in issue until a final hearing on the merits can be held. (*Hough v. Weber*, 202 Ill. App. 3d at 688.) Plaintiffs' complaint alleged defendants violated their fiduciary duties to plaintiffs and other members of Woodhaven by preventing plaintiffs from running for election to the board of directors.

A fiduciary relationship exists where there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith with due regard to the interests of the other. (*Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 533.) We believe the Woodhaven Association is similar to a condominium association in that the association's officers and board members serve the members of the Woodhaven Lakes community. Association officers and board members owe a fiduciary or quasi-fiduciary duty to the members of the association in that they must act in a manner reasonably related to the exercise of that duty, and failure to do so will result in liability not only for the association but also for the individuals themselves. (*Wolinsky*, 114 Ill. App. 3d at 533-34.) A board's proper exercise of its fiduciary or quasi-fiduciary duty requires strict compliance with the association declaration and bylaws. *Wolinsky*, 114 Ill. App. 3d at 534.

The evidence presented at the preliminary hearing reveals that nowhere do rules and regulations of the association provide that candidates must obtain plot surveys before running for election to prove they are in compliance with all association rules and regulations. Plaintiffs were disqualified despite the fact they had not received citations for any violations pertaining to property setback requirements, etc. The purpose of a preliminary injunction is not to determine controverted rights or to decide controverted facts of the merits of the case. *Vasquez v. City of Woodstock*, 242 Ill. App. 3d at 773; *Bryant v. Village of Sherman* (1990), 204 Ill. App. 3d 583, 588.

Plaintiffs only need show they raised a "fair question" about the existence of their right and that the court should preserve the status quo until the cause can be decided on the merits. (*Vasquez v. City of Woodstock*, 242 Ill. App. 3d at 773-74; *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386.) After a review of the record,

we conclude the evidence presented below supports the trial court's determination that plaintiffs raised a "fair question" as to whether defendants violated the association's rules, regulations and/or bylaws and, thus, breached the fiduciary duties owed to plaintiffs and other association members, and that the trial court should preserve the status quo by enjoining the opening of the ballots.

■■ Defendants next assert that the court failed properly to balance the equities in reaching its decision. In balancing the equities, the court must weigh the benefits of granting the injunction against the possible injury to the opposing party from the injunction. *Mustacci v. Austin Bank* (1992), 227 Ill. App. 3d 457, 459.

Defendants claim the court's decision to grant the injunction causes a greater harm to them than a decision denying the injunction would cause plaintiffs. Defendants assert the injunction harms the approved candidates who spent money on election materials and the association which mailed the printed ballots, as well as the members who had already cast their ballots. We disagree.

The injunction in this case merely delays the counting of ballots until a decision can be determined on the merits. The purpose of an injunction is to preserve the status quo pending a decision on the merits of the cause in order to maintain the last uncontested status which preceded the controversy. (*Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 674.) Injunctions that preserve the status quo are within the trial court's discretion. (*Mustacci v. Austin Bank*, 227 Ill. App. 3d at 459.) Here, the court's decision to grant the injunction was within its discretion because the injunction preserves the last uncontested status of the election by halting the counting of ballots until a final determination can be made. Without the injunction, the election would proceed and, as previously discussed, plaintiffs would be deprived of an effective remedy.

■■ Lastly, defendants argue the rights at issue were political in nature and, therefore, the courts have no jurisdiction to enjoin those rights. In support of their argument defendants cite *Fletcher v. City of Paris* (1941), 377 Ill. 89. In that case, our supreme court held that the courts have no jurisdiction to enjoin the holding of an election because an election is a political matter. (*Fletcher*, 377 Ill. at 92.) However, this case is clearly distinguishable for the obvious reason that it pertains to governmental elections.

The election at issue in the present case is civil rather than political in nature. (See *Levin v. Hunter* (1955), 6 Ill. App. 2d 461.) The Woodhaven Association is a non-profit corporation. Accordingly, the

election of its board of directors is not a "political matter" as discussed in *Fletcher*.

For the reasons set forth herein, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.